## INGALSBEE *vs.* WOOD.

One who leaves his horse at an inn, without receiving or asking accommodation or entertainment there, for himself, but *to the knowledge* of the innkeeper is provided for and lodged at the house of another, does not become the guest of the innkeeper.

In such a case, the innkeeper is not bound to receive the horse. If he does, he is not under the extraordinary liability which attaches to his calling or avocation, but his responsibility is that only of an ordinary bailee to whom the custody of property is intrusted for hire.

As such he is bound only to ordinary care — to reasonable diligence and good faith, in the preservation of the property. He can only be made responsible for negligence.

The relation of innkeeper and guest must exist, in all cases, or the liability of the former, as such, does not attach.

The accepting and keeping of the goods of a guest is accessory to the contract implied by law.

APPEAL from a judgment entered at a special term, after a trial at the circuit. The action was brought by the plaintiff, as assignee of the owner, to recover the value of a horse, harness and robes, which were destroyed by fire in the barn connected with the defendant's inn. The action was tried at the Washington county circuit, in May, 1851, when the plaintiff was nonsuited. The facts appearing in evidence are set forth, in sufficient detail, in the opinions below.

*I. W. Thompson,* for the appellant.

*I. Gibson* and *W. H. Brown,* for the defendant.

BOCKES, J. This is an appeal from a judgment, with a case containing exceptions. On looking into the case we find that the action was tried before the court with a jury, and involved two questions of fact only ; all others being admitted or undisputed. One question was whether the plaintiff's assignor was the guest of the defendant, who was an innkeeper, at the time of the destruction of the property. The other was, as to the value of the property destroyed. By the

agreement of the parties, the former was left to be determined by the court, and the jury found on the question of value. The judge reserved the case, and finally ordered judgment for the defendant. He found, as appears from his opinion, that the plaintiff's assignor was not the guest of the defendant; but there is no formal finding to that effect on the record, and of course there is no formal exception thereto. This question having been left to the judge, should have been found by him, and formally stated on the record. Then an exception could have been interposed, under which it could be properly and regularly considered on appeal.

As the case is presented on the record, this finding of fact in favor of the defendant is by inference only, and the exception to it is by construction. In this regard the case is defective for the purposes of a review on this question. The objection, however, is not raised by the counsel. The case is put on the merits, and we should therefore disregard any technical irregularity or informality in the record.

I will therefore assume that the case stands the same as if the judge had ordered a nonsuit at the circuit, on the whole case, and directed a dismissal of the complaint, and the defendant had duly excepted to such ruling and direction.

The learned judge held, as we shall assume, that the facts proved showed that the defendant held the property, at the time of its destruction, simply as a bailee for hire; not as the property of a guest at his inn.

The facts are these. In April, 1860, the defendant was an innkeeper at Hartford, Washington county. Aaron and Lyman Ingalsbee, father and son, resided together in Kingsbury in the same county, and were joint owners of the property destroyed. On the 1st April, 1860, Lyman went to church at Hartford, with a horse, wagon, harness, robe and whip. The defendant's inn was near the church. Ingalsbee drove under the defendant's shed, fastened the horse, and without giving any directions in regard to it, and without going into the inn, went to the house of his mother-in-law,

a few rods distant, where his wife was then staying. The horse was left there for four or five hours or more. Ingalsbee then returned, went into the defendant's bar-room, informed the defendant's servant that he had a horse under the shed, and that he wanted it put in the stable; that he was going to stay all night. The horse was then put in the defendant's stable and fed, where it remained until the following morning, when the stable was destroyed by fire and the horse perished in the flames; all without any fault of the defendant. Ingalsbee did not remain at the inn, nor did he receive for himself any entertainment there, but stayed over night at the house of his mother-in-law, with his wife, to whom he had been recently married. He had been in the habit of putting his horse under the defendant's shed, on his visits to his wife before the marriage, but never paid any thing for the accommodation.

It seems that he told the defendant's servant, when he directed the horse to be taken care of, that he intended to stay all night. By fair implication, under the circumstances, it must be assumed that he meant, and was understood to mean, that he intended to stay over night at the house of his mother-in-law, with his wife—not at the inn. The learned judge at the circuit so understood the evidence, as appears from his opinion; and the circumstances of his visit, in connection with his recent marriage, can leave no doubt of the correctness of this inference.

The case, then, when reduced, is simply this: Ingalsbee went on a visit to his wife, then stopping in a neighboring town, at her mother's house, a few rods from the defendant's inn. He went to the inn and directed his horse to be cared for, with the understanding, however, (for I think this is fairly, indeed necessarily, to be inferred from the proof,) that he was to remain and have accommodation and entertainment elsewhere, and in fact had not any entertainment whatever for himself at the inn.

Was he a guest at the inn?

Ingalsbee *v.* Wood.

An innkeeper is subject to extraordinary liability, and a person claiming to enforce such liability must show a case clear, beyond all reasonable doubt. This extraordinary liability is based on grounds of public policy, and carries with it a supposed equivalent or corresponding right in favor of the innkeeper, by way of lien or security on goods placed by a guest under his charge. He is bound to receive travelers, and to afford to them entertainment, and to a certain extent is the insurer of the goods of his guest. So it has been said that the law, on account of this duty and extraordinary liability, gives the innkeeper a lien on the goods of his guest for the satisfaction of his reasonable charges; and further, that the lien and liability must stand or fall together.

It has been often held, too, that a livery stable keeper who keeps, or the farmer who pastures the horses or cattle of another, has no lien for the keeping, without a special agreement to that effect. And so it is also decided that where horses were left with an innkeeper by a neighbor, for the purpose of being fed and kept, he had no lien, and for the reason that they were not placed there by or as the property of a guest. (*Grinnell* v. *Cook,* 3 *Hill,* 485. *Binns* v. *Pigot,* 9 *Car. & Payne,* 208.) How does the case at bar differ from this? Ingalsbee was not a traveler. He had arrived at his destination, and had taken up a temporary abode—had become a sojourner at the house of his mother-in-law. He accepted entertainment and accommodation there. If the guest of any one, he was her guest. He did not receive, nor did he contemplate, any favor at the inn, by way of personal entertainment there. All he desired or contracted for was provender and protection for his horse, while he visited and was entertained elsewhere. Suppose his mother-in-law had sent the horse to the inn, to be kept and fed for the night; would this have made her a guest at the inn? Certainly not; nor would it have made Ingalsbee, to whom this would have been an accommodation, a guest there. It can make no difference that Ingalsbee went himself, when his

character was known to be that of a visitor or guest at a neighbor's house. He was no more a guest at the inn than if he had sent his horse there by a servant of his mother-in-law, to be kept and fed for the night, with no purpose or intention of going there himself for personal entertainment. Judge Bronson says, that when the owner has never been at the inn, and never intended to go there as a guest, it seems little short of downright absurdity to say that in legal contemplation he is a guest. And he adds, "if our lawgivers had intended that the innkeeper should be answerable, as such, for every thing he received in charge, guest or no guest, they would have said so. They would not have taken the roundabout way of saying that he must answer for the goods of the guest, and that every one is a guest who has goods in his hands." So a neighbor who does not have or seek personal entertainment at an inn, is not a guest there, although he puts property under the charge of the innkeeper. Nor will any one become a guest simply from such transaction. He must also be a traveler, within the meaning of the law, or have personal entertainment or accommodation as such. The accepting and keeping of the goods of a guest is accessory to the contract implied by law.

If a traveler have no personal entertainment or accommodation at the inn except simply care and food for his horse, he would doubtless be a guest there; for he makes the inn his temporary abode—his home for the time being. In that case he is, with his property, "*infra hospitium.*" Not so, however, with the person who has his personal entertainment—his abode—and is in the actual enjoyment of a home elsewhere. In such case there is no implied contract between the parties, creating the relation of innkeeper and guest, and consequently no principal agreement to which the keeping and feeding of animals can be accessory. If, therefore, an innkeeper receive the goods and chattels of another, not his guest, he is not under the extraordinary liability which at-

taches to his calling or occupation, but is responsible only as an ordinary bailee.

The appellant's counsel relies on *Mason* v. *Thompson*, (9 *Pick.* 280,) *Yorke* v. *Greenough*, (2 *Ld. Ray.* 860,) and *Robinson* v. *Walter*, (*Poph. Rep.* 127.) It is enough to say that these cases are considered in *Grinnell* v. *Cook*, (3 *Hill*, 485,) and that the doctrine of *Mason* v. *Thompson*, which was supposed, but erroneously, to receive support from the other two cases cited, is distinctly repudiated. It will be found on examination of *Yorke* v. *Greenough*, and *Robinson* v. *Walter*, that the criticism upon them in *Grinnell* v. *Cook* is well sustained. The conclusion arrived at in the case last cited is, that *Yorke* v. *Greenough* and *Robinson* v. *Walter* do not afford a precedent for the rule laid down in *Mason* v. *Thompson*. And Judge Bronson, delivering the opinion of the court in *Grinnell* v. *Cook*, sums up by saying that he feels no disposition to follow that case. But the decision in that case must stand as good law or the case of the appellant at bar must fall. The cases are strikingly similar. In *Mason* v. *Thompson* the plaintiff's bailee stopped as a visitor with a friend, and sent the horse, harness and carriage to the inn. While there the harness was stolen. The defendant was held liable, and it was laid down in that case that if a person commits his horse to an innkeeper to be fed he is a guest, although he do not himself lodge or receive any refreshment at the inn. But, as has been seen, the reverse of this is the law of this state. It is said to have been held by Judge Nelson, in *Peet* v. *McGraw*, (25 *Wend.* 654,) that it was not necessary to the lien or liability of the innkeeper that the owner should be a guest. But Judge Bronson, who formed one of the court which pronounced that decision, says the case decides no such thing, (3 *Hill*, 488,) and that such deduction was improperly made from an expression of Mr. Justice Nelson not necessary to the decision of the case.

We are not therefore at liberty to say, against the authority of *Grinnell* v. *Cook*, that a person who puts his horse at

an inn is a guest, when he neither receives nor asks accommodation or entertainment there, for himself, but to the knowledge of the innkeeper, is provided for and lodged at the house of another. In such case the innkeeper is not bound to receive the horse ; and if he does, his responsibility is that only of an ordinary bailee to whom the custody of property is intrusted for hire. As such he is bound only to ordinary care, to reasonable diligence and good faith in the preservation of the property. He can only be made responsible for ' negligence. In this case, it is admitted that the injury did not occur from any fault of the defendant; hence there rests upon him no liability.

It is argued that even if Ingalsbee were the guest of Wood, still no liability attached to him for the loss of the property, inasmuch as it stands admitted that it was destroyed by fire without any fault or negligence on the part of the defendant. In other words, that an innkeeper may protect himself against the claim of his guest for the loss of his goods by fire, by showing that the loss occurred without any fault on his part. We are cited to *Merritt* v. *Clayborn* (23 *Verm. Rep.* 177) in support of this position. We deem it unnecessary to examine this question here. The case seems conclusively against the plaintiff on the point above discussed.

The judgment should be affirmed.

Potter, J. The defendant can be made liable only on the ground that he was an innkeeper, and that as such he would have had a lien upon the horse and other goods left with him, for the keeping of the horse. I think the law is that if the defendant could have enforced a lien upon the property on his part for the keeping of the horse, then his liability to respond for the loss of the property clearly follows. The *lien*, and *liability*, stand or fall together. (*Grinnell* v. *Cook*, 3 *Hill*, 498, *per Bronson, J.*)

The liability of an innkeeper to his *guest*, like that of a common carrier to his employer, is not discharged by his

Ingalsbee *v.* Wood.

showing that the fire was owing to no fault of his; but to an accident. (*Hyde* v. *The Navigation Company*, (5 *Term R.* 389.)

The only question, then, really necessary to be discussed is, whether the facts in this case establish the relation of *innkeeper* and *guest*, between the defendant and Lyman Ingalsbee. Upon principle, I should not hesitate to hold that the relation did not exist in this case. It did not *actually* exist; that is clear. Ingalsbee, on that occasion, was furnished with neither room, lodgings, food, drink, nor any other single comfort or service, that is ever *personally* furnished to the *guest* of an innkeeper; and I can find no adjudged case that holds the innkeeper to this strict liability, except to his *guest*. The rule of liability is founded on a contract implied in law; to *feed, lodge* and accommodate the guest for a suitable reward. (2 *Kent's Com.* 758.)

In all the other business relations of life, the law affects innkeepers, as it does all other persons. In regard to the goods of their *guests*, the law regards their liability as being different; and the strictness of the rule in that respect is an exception. This extreme rule of liability was originally adopted from considerations of public policy, to protect travelers, not merely from negligence of innkeepers, but from the dishonest practices to which innkeepers at an early period often resorted through their servants, or other persons, in conspiring with them to rob and plunder their *guests;* and which practice might still continue, but for this wholesome rigor of the law, so found necessary to insure the security of the guest. (*Mason* v. *Thompson*, (9 *Pick.* 284.) The rule is a wise and salutary one, even at this day. As it is necessary therefore, in order to entitle the plaintiff to recover, that Lyman Ingalsbee should have been the *guest* of the defendant, either actually or constructively — "*infra hospitium*"— when the loss happened, we will proceed to examine the question of what is necessary, in order to constitute one the *guest* of an innkeeper.

I examine this first, as an original question; because, upon consultation of legal authorities, I find the definition of a " *guest*" not uniformly the same. It has been much extended in its meaning in modern days; first, into divisions of *actual* and *constructive ;* and then the constructive division has again been extended, until the entertainment of a *horse* in the stables and at the rack, has been held to be the *constructive* entertainment of its owner in the house and at the table; or, in other words, the *animal*, horse, has been held to be sufficient symbol, to represent the original idea of *guest*, in his *human* master. Guest, in the ordinary acceptation of its meaning, and according to Webster, is, 1. "A stranger; one who comes from a distance and takes lodgings at a place either for a night or for a longer time." And 2. " A visitor ; a stranger or friend, entertained in the house or at table of another, whether by invitation, or otherwise." One of the oldest legal definitions of a guest that I have found in the law books, is cited from Lord Holt, in *Parker* v. *Flint*, decided in 1698, (12 *Mod. R.* 255,) to wit: "If one comes to an inn and had made a previous contract for lodging for a set time, and does not *eat* or *drink* there, he is no guest, but a lodger ; and as such, is not under the innkeeper's protection ; but if he eats or drinks there, it is otherwise ; or, if he pays for his diet there, and does not take it there." The idea here is strongly put; that though a man be an innkeeper, he is still permitted to make *special contracts*, like other persons, and if a special contract be made with him to lodge only, the innkeeper takes him not as a *general* guest, but as a *special* lodger, which he may do; (*Parkhurst* v. *Foster*, 1 *Salk.* 387 ;) and in such case, he is liable to his lodger for his goods, in law, like any other *bailee*, but not as an *innkeeper*. The special contract for a limited purpose, does not bring the case within the policy of the law ; and he must depend upon the special or limited contract. (*Rol. Abr.* 3.) I think, therefore, we may safely say that the innkeeper who receives only property, of a person not his *guest*, according to the forego-

ing definition for safe custody, even though such property be an animal to feed, and from whose keeping there may be some profit, is answerable only as an ordinary bailee. Though the fact of his being an *innkeeper* may perhaps throw the burthen of proof on him, to show the character of the bailment, and also that he exercised ordinary care. In this case it was admitted that the defendant was without fault. (5 *Barb.* 564. 5 *Bl. R.* 323.) The foundation of this strict rule of liability, against innkeepers, was for passengers and wayfaring men. *Calley's case* (*reported in* 8 *Co.* 32) is one of the oldest cases in the books of reports, and is cited with approbation in all the modern authorities. It was there held, " that to entitle the plaintiff to bring the action, he ought to be a passenger ;" "that a neighbor shall not have the action." That case also holds out the idea that a *guest* of an inn is something more than the mere stopping of a neighbor for convenience. It seems to mean, " one who relies upon, or adopts the inn as his home for the time being," though the length of time which the guest remains, it seems, will not affect his right as such, provided he live there in the transitory character of a guest. (*Bac. Abr., Guest,* 5.)

The definition of an innkeeper shows that the same idea is the most prominent; that it must be a *person* to be entertained, to constitute a *guest.* Where, therefore, there is *no person* to be entertained, there is *no guest.* There is no difficulty, according to this definition, in showing that Lyman Ingalsbee was the guest of Mrs. Allen, his mother-in-law, at the time in question—an *actual* guest. Could he then, while an *actual* guest of one person, be the *constructive* guest of another, and upon this fiction of law be entitled to recover? Can one person be a *guest* at two different places at the same period of time? Had Mrs. Allen been an innkeeper also, would that fact have changed the defendant's liability, or the rule of law? I think not. "An innkeeper is a person whose business it is to entertain passengers and travelers, and provide lodgings and necessaries for them."

(*Bac. Abr., Guest, B.*)    The innkeeper may detain the *horse* of his *guest*.    (*Cro. Car.* 271.)    This carries the idea that the horse, and the guest, are distinct; the *one* does not represent the *other*.    We have now seen what it is to be *actually* a guest of an innkeeper.    "An *inn* is a house where the *traveler* is furnished with every thing that he has occasion for while on his way."    (*Thompson* v. *Lacy*, 3 *Barn. & Ald.* 283, 6.)    "It is a house kept open publicly for the lodging and entertainment of *travelers* generally, for a reasonable compensation."    (*Hill. Elem. of Law*, 101.    *Jac. L. Dic. title Inn.*)    But we find, also, in the books, that a person may be *constructively* a guest, for the purpose of maintaining an action against the innkeeper, upon this technically rigid rule of liability.    The difficulty that presents itself is, to fix definitely the reasonable line which determines the limits of the rule, of who may, and who may not, be a constructive guest.    This should be an unvarying rule, based upon a principle of sound reason, with a certain limit, and not a sliding scale, which may be graduated by sympathy or prejudice, varying with, or yielding to, cases of peculiar hardship.    We have already said, 1st. That the relation of innkeeper and guest, in all cases must exist, or the liability of the former as such, does not.    (*Grinnell* v. *Cook*, 3 *Hill*, 489.)    In the case last cited, nearly all the cases of this constructive relation were fully and ably reviewed by the supreme court; and, as I think, with the true conclusions. 2d. "That the right of lien always exists where the innkeeper was bound by law to receive the goods."    At common law, innkeepers are bound to receive guests when required to do so, if not otherwise full; but this compulsion is not the law as to livery stable keepers, agisters, or of other employments, except common carriers.    Therefore it is, that the law gives the lien, as compensation in degree, for this liability.    The cases cited, which I regard as authority as to what persons are constructive guests, are consistent with this rule.    In the case of *Sir Edwin Sands*, cited in *Gelly* v.

*Clerk, (Cro. Jac.* 188.) "He came to an inn and lodged, went out thereof in the morning, left his cloak bag there, intending to return at night, and returned accordingly, and in the interim, his cloak bag was stolen ; it was held he could recover." He had been *actually* the guest ; the relation had not ended ; though actually absent, he was at law construct- ively the guest, when the theft was committed. So it was argued in the same case, "that if one comes to an inn and leaves his goods and horses, and goes into the town, and after return, and in the interim his goods are stolen, no doubt he is a guest." I think the argument was sound. If he stopped at the inn, he made it his home ; it was unnecessary he should have lodged or eaten ; he was liable to pay for his room, his board and his horse keeping, and *this* liability in law is equivalent to having paid. Though actually absent, he was constructively a guest. The innkeeper was bound at law to receive and provide for him ; and he had his lien on his goods for his bill ; and whether the guest remained out, or stayed in, he had his rights at the inn, and upon the keeper ; and the innkeeper had his corresponding rights to a lien, by rea- son of his being a guest.

The case of *Yorke* v. *Grenaugh,* which has an apparent bearing the other way, was reviewed by Bronson, J. in *Grin- nell* v. *Cook.* The judges in that case differed. Powell and Gould against Holt ; the former cited the case of *Robinson* v. *Walter,* reported in *Popham's Rep.* 127, as their authority. Bronson, J. examined this authority; upon which, as he says, the dictum of Powell and Gould decided that point; and he thinks they were not sustained by the case they relied on. The same case is reported in 1 *Salk.* 388, by a different title—"*York* v. *Grindstone*"—and which has been cited as additional authority, in this case. I have had access to *Bul- strode's Rep.* 269, where the case of *Robinson* v. *Walter* is also reported, and much more fully, from which it affirma- tively appears, as Judge Bronson remarks, in *Grinnell* v. *Cook,* that the horse was brought to the inn by a stranger,

who was a *guest* for some time, and departed, leaving the horse; the true owner afterwards hearing of his horse at the innkeeper's, demanded him, and it was held that, although the horse was left by one who was not the owner, and although the owner had never been a *guest*, yet, *as the law compelled the innkeeper to receive the stranger as a guest*, it was right that it should give him a *lien* on the horse, even as against the true owner. That case is therefore not authority for what it is cited to show.

The principle of this rule is further illustrated in the case of ~~Barnell~~ v. *Mellor*, (5 *Term Rep.* 273.) The defendant in that case was an innkeeper, against whom the plaintiff brought his action for the value of the goods stolen out of the inn. The plaintiff's servant had taken the goods in question to the Manchester market, and being unable to dispose of them, asked leave at the inn to have the goods kept there till the next week. The answer given by the defendant's wife was, "that they were very full of parcels, and she could not tell." The plaintiff's servant then sat down in the inn, called for and drank some liquor, and put the goods on the floor behind him. When he got up, after sitting a while, the goods were missing. The plaintiff had a verdict. Buller, J. said: "The circumstances of this case distinguish it from that cited, where the innkeeper said his house was full, and refused to take the guest. That, if true, is a good excuse; *if false, the innkeeper was liable to an action for refusing to take in a guest*; but here the request was merely to take care of the plaintiff's goods until next week. If the defendant had taken the goods, upon this request, he would have been liable only as bailee, but that proposal was not accepted. Of course the case then stood as if no such offer had been made. The plaintiff's servant sat down, drank and became the guest of the house. Though a temporary guest, he was still a guest, and this was the ground of the decision. Gross, J. in the same case admits, in effect, that the innkeeper had a right to refuse to keep his goods without his

*[margin note: Bennett]*

Ingalsbee *v.* Wood.

*person,* but had *no* right to refuse *his person as a guest;* and not having objected to that, he became a *guest,* and the innkeeper became liable for the goods. In the case of *Binns* v. *Pigot,* (9 *Car. & Payne,* 208,) which was an action of trover, brought by the owner of a horse against an innkeeper, who claimed a lien upon him for his keeping, it did not appear distinctly how the horse came to the *innkeeper's* hands, but Parke, B. said: "An inkeeper has no lien upon an animal put into his stable, unless it be brought by a guest."

From these leading cases it appears to me, in this case, that Lyman Ingalsbee was in no sense of the term either the actual, or the constructive, guest of the defendant. Merely feeding his horse did not constitute its master a constructive guest. The only case, of American authority, that has been cited to prove him a constructive guest, is that in the court of Massachusetts, of *Mason* v. *Thompson,* (9 *Pick. R.* 280,) where it was held " that if a person commits his horse to an innkeeper to be fed, he is a guest," although he do not himself lodge or receive any refreshment at the inn. Wilde, J. in that case, it will be seen, bases his opinion upon the authority of *York* v. *Greenaugh,* (2 *Ld. Raym. R.* 866,) which we have shown by our examination, and the much more thorough and satisfactory review of Judge Bronson, is incorrectly reported in *Popham's Reports;* from which it is cited, but as it is reported in *Bulstrode* it is not in conflict, but entirely in harmony with the other English cases. And if it was really in conflict, Judge Bronson says " he should feel no disposition to follow it." *Mason* v. *Thompson,* therefore, stands alone ; and stands, as I think, upon this point, without a ground of principle to support it. *Grinnell* v. *Cook,* (3 *Hill,* 485,) is a later and much better considered case in our own court, and entirely overturns *Mason* v. *Thompson.* Grinnell, in the latter case, was a tavern keeper, with whom one Tyler had put five horses to be taken care of. Cook, the defendant, was a deputy sheriff, and had levied on the horses on an execution against Tyler, the owner. Grinnell, the

innkeeper, sued for taking away the horses, without paying his lien for their keeping. Tyler, the owner of the horses, had not lived at Grinnell's house at all ; in other words, *had not been a guest.* The plaintiff was nonsuited. The court say : "Tyler, who owned the property, was not a traveler, nor was he in any sense a guest in the plaintiff's house, and I think it quite clear that the plaintiff was not bound to receive and take care of the horses." They affirmed the judgment of nonsuit.

The case we are considering, in its features, involves the same principles as *Grinnell* v. *Cook.* Lyman Ingalsbee in no sense of the term, actual or constructive, was the guest of the defendant. He made no proposition to become such guest, but he ate, drank, lodged and was provided for, at a different place. The length and breadth of his proposition to the innkeeper was, *to have his horse fed there,* probably because it was the most convenient place. The remark, "I am going to stay all night," must be construed according to his meaning; to which he at the time gave practical construction ; and from the circumstances of his recent marriage, it was doubtless understood by the defendant's servant to mean that he was to stay with his wife, at his mother's-in-law, and not at the inn. The defendant was not bound in law to receive his horse, but did it ; and he took as good care of this as he did of his own property. These privileges and responsibilities should be reciprocal between these parties — a duty, upon a right. He who does not become, and does not intend to become, a guest, is not entitled to the benefit of the rigid rule of law to which guests *only* are entitled. (*Fox* v. *McGregor,* 11 *Barb.* 41. 5 *Sand.* 242.) He was an ordinary bailee, and is only liable as such. The accident was without fault of the defendant. It was merely a special contract on his part to take care of the horse ; his liability was like that of a livery stable keeper, a warehouseman, or an agister. He had not the innkeeper's lien, nor the innkeeper's liability. (*Edwards on Bailments,* 397.) The con-

tract as understood between the parties was not with the defendant as *innkeeper*, on the one part, and a *guest* on the other. It was simply, on the one side, a neighbor, or the guest of a neighbor, who desired a night's stabling for a horse, and that only; and on the other side, an individual whose general business was innkeeping, consenting to receive a horse into his stable to be fed. I am satisfied that I was right in the opinion I gave on the trial, and I am for affirming the judgment.

ROSEKRANS, J, and JAMES, J. concurred.

Judgment affirmed.

[CLINTON GENERAL TERM, May 6, 1862. *Rosekrans, Potter, Bockes* and *James*, Justices.]