.          Smith agt. Read.

# N. Y. COMMON PLEAS.

## WILLIAM W. SMITH agt. RUFUS C. READ.

*Boarding-house keepers — liability of — negligence.*

A boarding-house keeper is liable for the loss of his guest's goods, occasioned through the negligence of his own servants while they are acting within the scope of their employment.

It is incumbent on a boarding-house keeper to exercise due and proper care of the baggage or property of his boarder — such care as a prudent person would take of his own property.

It seems that the rule that a master is liable to third persons for the negligence of his servants while acting within the scope of their employment, is equally applicable to boarding-house keepers.

*General Term, December*, 1875.

*Before* DALY, *Ch. J.*, LOEW *and* J. F. DALY, *JJ.*

APPEAL by the defendant from a judgment for $102.76, besides costs and extra costs, rendered in favor of the plaintiff by the second district court of the city of New York.

*Francis Byrne*, for defendant.

*William D. Foulke*, for plaintiff.

LOEW, *J.* — It appears, from the evidence, that the defendant is a boarding and lodging-house keeper, and that the plaintiff had been boarding and lodging with him for some time prior to the 20th day of March, 1873. On the morning of that day, the plaintiff left his room as usual, and on his return in the afternoon he found that a dress coat, a seal skin

Smith agt. Read.

cap and some articles of jewelry had been taken from it during his absence. He made inquiries of the defendant's housekeeper as to what had become of the goods, and she informed him that they must have been stolen by a colored man whom she had employed to clean the shutters; that she had never seen him before the previous day when he put in some coal for her; that she had permitted him to go into his (the plaintiff's) room alone; that it was very careless of her to do so, but that as the other rooms were occupied by ladies and others, it never occurred to her that his (the plaintiff's) was unoccupied.

As it further appears in evidence that the negro employed by the defendant's housekeeper never called to obtain payment for the services he had rendered, and as he could not be found at the place where he had told her that he resided, there can be but little doubt that he committed the theft of the plaintiff's goods. Nor do I think that it can be seriously questioned that the defendant's housekeeper was guilty of negligence in permitting a person who was a stranger to her, and of whom she knew absolutely nothing, to remain alone in the plaintiff's room, where the goods of the latter were exposed to his cupidity, and where he had ample facilities for theft.

The only question, therefore, presented for our consideration and determination in this case is, whether a boarding-house keeper is liable for the loss of his guest's goods, occasioned through the negligence of his own servants while they are acting within the scope of their employment? This point was much discussed in the case of *Dansey* agt. *Richardson* (3 *El. & Bl.*, 144). The question there was, whether the defendant, a boarding-house keeper, was responsible for the loss of a dressing case belonging to a boarder, which was placed in the hall just previous to the guest's departure, from which place it was stolen by a thief, who entered by the hall door which had been negligently left open by one of the boarding-house keeper's servants. The cause was tried

before ERLE, J., who instructed the jury that a boarding-house keeper was not bound to exercise more care of her guest's property than a prudent person would take of her own; and that the defendant was not liable unless she was guilty of negligence in hiring or keeping the servant. A verdict was given for the defendant. On a motion for a new trial, on the ground of misdirection, the whole court held that it was incumbent on a boarding-house keeper to exercise due and proper care of the baggage of his boarder — such care as a prudent person would take of his own property; and that leaving the hall door open might be a want of such care, and that so far the instruction to the jury was correct. But upon the other point the judges were equally divided. Lord CAMPBELL, Ch. J., and COLERIDGE, J., were of the opinion that the defendant was answerable for the negligent act of a servant in her employment as well as her own personal negligence; that no distinction was to be made between the two, and that, therefore, the direction was erroneous. On the other hand, ERLE, J., and WIGHTMAN, J., held that the defendant was not liable for the negligence of her servant unless she was herself negligent in hiring or keeping a careless or imprudent servant, and that, consequently, the direction was correct.

Subsequently, the case of *Holder* agt. *Goulby* (8 *C. B. Rep.* [*N. S.*], 254), came before the court of common pleas, and ERLE, Ch. J., and BYLES and KEATING, JJ., held that the keeper of a lodging-house was under no obligation to take care of his lodger's goods, and was not responsible for their loss. In that case, the lodger's property was stolen by a person who, in his absence, was permitted by the lodging-house keeper to see the rooms with the view of hiring them. But ERLE, Ch. J., nevertheless, intimates, in his opinion, that where the loss has resulted from gross negligence on the part of the lodging-house keeper, he will be liable.

Now, it seems to me that a distinction may be made as regards liability, between a boarding-house keeper and one

who merely lets lodgings. Assuming, however, that ERLE, J., is correct when he says, in *Dansey* agt. *Richardson* (*supra*), that the same reasoning will apply equally to each, I am of opinion, after much consideration, that the rule of law as laid down by the court in the last named case, is the better and more correct one. Nearly every objection which can be urged against charging a boarding-house keeper for the loss of his guest's goods will, upon reflection, be found to apply with equal force to an inn-keeper. Yet the latter is deemed an insurer of the property of his guest, and is bound to make good any loss, with some rare exceptions (*Hulett* agt. *Swift*, 33 *N. Y.*, 571). It may be said that because of this extraordinary liability the law to some extent recompenses him by giving him a lien upon the goods of his guest, by which he can enforce summary payment of his reasonable charges. But in this state a boarding-house keeper now has, by statute, all the rights and remedies in respect of the baggage and effects of his guest that an inn-keeper possesses (*Laws of* 1860, *chap.* 446 ; *Jones* agt. *Morrill*, 42 *Barb.*, 623).

In *Ingalsbee* agt. *Wood* (36 *Barb.*, 452), the court, speaking of the inn-keeper's lien, say : " The lien and liability must stand or fall together." The material question then is, shall the boarding-house keeper have the inn-keeper's lien without incurring any of his liability ? Shall he possess all the inn-keeper's rights and advantages, without any corellative duty or obligation on his part ? I apprehend not. When the boarding-house keeper receives a boarder into his house he also receives as incident to it his baggage and effects, and he ordinarily makes arrangements with reference thereto just as much as the inn-keeper does with respect to the goods of his guest. In both cases this is done for hire and reward ; and it can make no difference that in the one case the compensation is included in the contract made with the boarding-house keeper, while in the other it is embraced within the reasonable charges which the inn-keeper is authorized to make.

Smith agt. Read.

Again, the boarding-house keeper usually has the custody and control of the property belonging to his boarders fully as much as the inn-keeper has the care and keeping of that belonging to his guests. The boarding-house keeper, moreover, may be said to have the advantage of the inn-keeper in that he may, at his option, refuse to take an applicant for board whose appearance or references may not be satisfactory, whereas, the inn-keeper is obliged to receive and entertain all who come unless he has a lawful excuse for refusing to do so. In view of all this, it is, as COLERIDGE, J., very properly remarks in *Dansey* agt. *Richardson*, difficult to see why, on principle merely, the boarding-house keeper should not be required to take at least as much care of the goods of a guest as the inn-keeper.

It is true the extreme liability of an inn-keeper is owing to a custom which had its origin in a peculiar state of society which does not exist at the present time. Nevertheless, judge PORTER, in delivering the opinion of the court of appeals, in *Hulett* agt. *Swift* (*supra*), says: " The considerations of public policy in which the rule had its origin forbid any relaxation of its rigor. * * * We are not at liberty to discard the settled rules of the common-law, founded on reasons which still operate in all their original force. * * * The rule is salutary and should be steadily and firmly upheld." I do not however by any means wish to be understood as favoring the idea that a boarding-house keeper should be held to the same degree of care in respect to the goods of his boarder that is exacted from an inn-keeper. All that I contend for is, that he should be required to exercise due and reasonable care ; such care as a prudent person would ordinarily take of his own property. That care the court, in *Dansey* agt. *Richardson*, conceded he was bound to take ; and that care, it seems to me, it is but fair and just to the boarder that he should take.

But we are not left wholly without authority on this point, so far as our own courts are concerned. In *Ingalsbee* agt. *Wood*

(*supra*), Mr. justice POTTER, in speaking of the responsibility of an inn-keeper to one who is not his guest but merely a lodger, says: " In such a case he is liable to his lodger for his goods, in law, *like any other bailee*, but not as an inn-keeper." The case of *Buddenberg* agt. *Buner* (1 *Hilt.*, 84), in this court, would also seem to be in point. It appears to have been an action between the assignee of a boarder and a boarding-house keeper, to recover for the loss of clothing stolen from the boarder's room. The reporter in his head-notes it is true assumes that the defendant was an inn-keeper, but the statement of facts goes to show that the relation of boarding-house keeper and boarder existed between the defendant and the plaintiff's assignor. Besides, it also appears that the latter was not a traveler but a workman. The district court rendered judgment in favor of the plaintiff, and this court on appeal affirmed the same, judge INGRAHAM delivering the opinion. It seems to me, therefore, that both upon principle and authority, a boarding-house keeper should be held to the exercise of ordinary and reasonable care in respect of his boarder's goods.

As regards the liability of a boarding-house keeper for the negligence of his servants, I agree in the views expressed in the opinion of chief-justice CAMPBELL and judge COLERIDGE, in the case of *Dansey* agt. *Richardson*. The general rule undoubtedly is, that a master is liable to third persons for the negligence of his servants while acting within the scope of their employment as such. I know of no good reason why a boarding-house keeper should be an exception to this rule. " *Qui facit per alium facit per se* " is a maxim which seems to me to be as applicable to him as to any other person. A boarder at a boarding-house, in general, has no more control of, or authority over the servants in the house than a guest at an inn has over the inn-keeper's servants. Mr. Redfield, in his valuable work on bailments (*page* 441, *note*), says that both in London and on the continent there are two kinds of boarding-houses; in the one class the house is virtually given

up to the boarders, the keeper himself being only a head ser-
vant over the other servants, and all of them in the service
of the boarders; in the other class, the house, the servants
and all the goods therein are in the possession and under the
control of the keeper, who is responsible for the carefulness
of the one and the safe keeping of the other. This readily
accounts for the difference of opinion among the learned Eng-
lish judges on this question of holding the boarding-house
keeper liable for the negligence of his servants. But the
same author proceeds to say, that in the United States the
latter class is almost the only one which exists to any great
extent. And after commenting on the cases of *Dansey* agt.
*Richardson* and *Holder* agt. *Goulby*, he expresses the opinion
that in this country " the view of the law maintained by
lord CAMPBELL, Ch. J., and COLERIDGE, J., is the one which
is alone applicable." So also, Mr. Parsons, the learned author
of the work on contracts (*vol.* 2, *page* 153, *5th ed.*), in con-
trasting the opinions of ERLE and WIGHTMAN, JJ., with those
of CAMPBELL, Ch. J., and COLERIDGE, J., says : " We cannot
but think this latter view more consistent with reason
and with the authorities, so far as they bear upon the
question."

It follows from what has been said, that the court below
was authorized to find upon the evidence adduced in this
case, that the loss of the plaintiff's goods was occasioned by
the negligence of the defendant's servants, and was therefore
correct in adjudging that the defendant was responsible for
the damage resulting from the larceny. But the aggregate
value of the goods stolen, as proved on the trial, does not
exceed in amount ninety-three dollars. The court could not
allow the plaintiff for the two or three small articles of jew-
elry when there was not a particle of evidence of their value.
There should have been at least some proof of value to jus-
tify the awarding of more than mere nominal damages for
them. The witness could not testify as to the value of those

Smith agt. Read.

articles, and I do not think that the court was warranted in simply guessing at or arbitrarily fixing their value.

The judgment should, therefore, be reduced to ninety-three dollars and affirmed for that amount, with costs and extra costs of the court below; neither party to have costs on appeal to this court.

DALY, Ch. J., and J. F. DALY, J., concurred.