(4 Misc. Rep. 528.)

## SIEGMAN v. KEELER.

(Common Pleas of New York City and County, General Term. Aug. 9, 1893.)

1. REVIEW ON APPEAL—ADHERING TO THEORY OF CASE.

   In an action against a boarding house keeper for the loss of apparel belonging to a boarder, and stolen from his room during his absence, where it appears from the justice's return and the proceedings on the trial that the complaint, which was oral, was founded on a charge of negligence on defendant's part, and that theory was acquiesced in by both parties, plaintiff cannot have a judgment in his favor affirmed on appeal on the ground that the evidence showed a conversion by defendant, she having taken possession of his room during his temporary absence.

2. BOARDING HOUSE KEEPER—LIABILITY—LOSS OF GOODS.

   A boarding house keeper is liable for the loss of goods belonging to a boarder only if he has omitted to exercise ordinary care to prevent it.

3. SAME—DEGREE OF CARE.

   A boarding house keeper is under no obligation to keep a boarder's room locked in his absence.

4. SAME.

   The failure of a boarding house keeper to rid her house of a boarder who had twice failed to securely close the front door after entering late at night does not show a want of ordinary care to protect her patrons' effects.

Appeal from seventh district court.

Action by Richard Siegman against Sarah W. Keeler. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before BISCHOFF and GIEGERICH, JJ.

Albert F. Hagar, for appellant.

Sol. Kohn, for respondent.

BISCHOFF, J. Plaintiff sued to recover damages which he claimed had resulted to him and his assignor from the loss of certain wearing apparel while they were patrons of defendant's boarding house. It was conceded that the property had been purloined from plaintiff's room, but it was contended that defendant could have prevented loss by the exercise of due care, which she had omitted. The action was tried by the justice without a jury, and resulted in a judgment for plaintiff. The complaint was oral, but it appears from the justice's return and the proceedings on the trial that it was founded upon an alleged cause of action for damages arising from defendant's negligence, and such was the theory acquiesced in by both litigants. Seemingly apprehensive, however, that his claim of negligence is not sustained by the evidence, respondent's counsel contends that the judgment should be affirmed notwithstanding, because the evidence is sufficient to authorize a recovery against defendant in conversion, it appearing that defendant had assumed possession of plaintiff's room during his temporary absence therefrom. That contention should not be permitted to prevail. The recovery must in every case be secundum allegata et probata, (Romeyn v. Sickles, 108 N. Y. 650, 15 N. E. Rep. 698;) and the theory of the action which was adopted by the trial court with the acquiescence of the parties will govern in the

appellate court for the purpose of review, (Home Ins. Co. v. Western Transp. Co., 51 N. Y. 93, 96; Stapenhorst v. Wolff, 65 N. Y. 596.) In part, at least, plaintiff's right to the damages awarded is dependent upon an assignment to him of his brother's alleged claim against defendant for damages arising from the latter's negligence; and were we now to affirm the judgment because the facts developed on the trial may show a conversion by defendant of the property subsequently stolen from her custody, it would imply our sanction of the recovery in part without proof of plaintiff's right to demand the damages awarded. The rules above referred to are therefore peculiarly applicable to the case at bar. A boarder is not a guest in the sense in which it is applied with reference to an innkeeper's liability, (Hancock v. Rand, 94 N. Y. 1,) and, unlike the latter, who is liable as an insurer of his patron's goods, (Hulett v. Swift, 33 N. Y. 571,) a boarding house keeper is answerable for a loss of the goods only if he has omitted to exercise ordinary care to prevent it, (Barber v. Harrison, 6 City H. Rec. 89; Smith v. Read, 6 Daly, 33; Cooley, Torts, p. 761.) Ordinary care is that degree of care which constitutes the average of common prudence, and would have been employed by most persons under the same circumstances, (Ernst v. Railroad Co., 35 N. Y. 9, 26,) and in the case of a boarding house keeper may properly include the exercise of a reasonable degree of discrimination in the admission and maintenance of persons as patrons of his establishment. A boarding house keeper, furthermore, is, in the absence of an agreement to the contrary, in contemplation of law, a custodian of his patron's goods. Ingalsbee v. Wood, 36 Barb. 452; Smith v. Read, supra. The former thus becomes a bailee of the latter's goods. The relation of the parties creates a bailment for mutual benefit, which imposes upon the bailee a duty to exercise ordinary care to protect the goods intrusted to him against loss by theft or otherwise, and subjects him to responsibility for ordinary negligence; that is to say, for the omission to exercise ordinary care. Story, Bailm. (9th Ed.) § 23; Coggs v. Bernard, 1 Smith, Lead. Cas. (Amer. Ed., Hare & Wallace's notes,) p. 382; 4 Lawson, Rights, Rem. & Pr. § 1698 et seq. If, upon proper demand by the bailor, the goods are not restored by the bailee, and no sufficient excuse therefor is offered by the latter, he may be deemed to have converted the same to his own use, and mulcted in damages accordingly; but if it be shown that the goods have been lost, destroyed, or stolen, he is not answerable for their value, unless it further appears that with due care on the part of the bailee the loss, destruction, or theft would have been averted. Claflin v. Meyer, 75 N. Y. 260; Leoncini v. Post, (Com. Pl. N. Y.) 13 N. Y. Supp. 825. The burden of proof in such a case is, as in other instances of imputed negligence, upon him who asserts the want of due care, (Claflin v. Meyer, Leoncini v. Post, supra,) the presumption always being that a person has performed a duty required of him, (Bailey, Onus Prob. 216; Cosulich v. Oil Co., 122 N. Y. 118, 25 N. E. Rep. 259; Turner v. Kouwenhoven, 100 N. Y. 115, 121, 2 N. E. Rep. 637.)

Three circumstances are urged in plaintiff's behalf as sustaining the burden of proof respecting defendant's omission to exercise ordinary care in the preservation of her patrons' goods, namely, that the door of defendant's house, which communicated directly with the street, was maintained by her in insecure condition against the ingress of unbidden visitors; that she did not keep the particular room which was occupied by plaintiff and his brother securely locked during their absence therefrom; and that she did not eo instanti eject a fellow boarder, whose excessive conviviality on one or two occasions had caused him to leave the front door ajar on his return home late at night. From these alleged facts we are asked to conclude that defendant failed to exercise ordinary care. Concerning the first, we are of the opinion that the evidence is directly to the contrary. True, plaintiff did testify that he believed the front door to be insecure, but he also admitted that he never subjected his belief to a practical test, while a number of other witnesses, including plaintiff's brother, deposed that the door was as secure as such doors generally are, and could be opened from outside only by means of a key. Next, in the absence of proof to the contrary, we must assume that defendant exercised at least ordinary care in the admission of persons as patrons of her house or otherwise, refusing admission to such as were known to be of ill repute, vicious inclinations or habits, by which the persons or goods of others were endangered. Having done so, she was not to be considered as an insurer against acts of imprudence or dishonesty on the part of persons admitted, and it most certainly would have been an exhibition of extraordinary vigilance if, under such circumstances, defendant had kept every room, nook, and cranny of her house securely locked and bolted against possible marauders from within. Lastly, we are unable to persuade ourselves that with like care in the choice of her patrons it was even slight negligence on the part of defendant that she did not rid her house of a patron who had once, or even twice, relaxed the exercise of ordinary caution to securely close the front door after his ingress late at night. It would involve the severest strain to construe this circumstance into omission by defendant to use ordinary care to protect her patrons' effects. Occasional omissions of precaution of merely prudential suggestion, however induced, are not of infrequent occurrence. We do not believe ourselves at fault if we assume that they have happened to most, if not to all, persons, and that they will happen again and again, and because of that fact the frailty of human foresight in that respect may be said to fairly enter into the consideration of our daily affairs, and so that plaintiff and his brother may be deemed to have entered defendant's house subject to the risk of such occurrences. If it was negligence for defendant to continue to harbor an offender upon discovery of his transgressions, it would have been equally so for another to have afforded him shelter with knowledge of his fault; and the logical sequence of respondent's contention would be that the occasional lapses of defendant's con-

vivial boarder should have been visited with punishment so severe that he would be from thenceforth and forever compelled to be "a wanderer on the face of the earth." Of course, a vastly different aspect of the matter would have been presented had it appeared in evidence that defendant continued to harbor a patron who was habitually remiss in his attention to matters of common prudence, and whose conduct thus tended to expose the persons and goods of other patrons to needless risk. The judgment should be reversed, and a new trial granted, with costs to appellant to abide the event.