## GILBERT v. WILLIAMS.

(Supreme Court, Appellate Term. December 20, 1907.)

1. INNKEEPERS—LOSS OR INJURY TO PROPERTY OF GUEST.

An innkeeper is absolutely liable for all thefts from within or unexplained losses of property belonging to his guest, although he may be discharged from liability by the guest's contributory negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Innkeepers, §§ 17–34.]

2. SAME—LIABILITY OF BOARDING HOUSE KEEPER.

The absolute liability of an innkeeper for all thefts from within or unexplained losses of property belonging to his guest does not extend to the keeper of a boarding house, whose duty is merely to exercise such care as a prudent man would exercise over his own property under similar circumstances, and he may be discharged from liability by the guest's contributory negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Innkeepers, § 20.]

3. SAME—ACTION AGAINST BOARDING HOUSE KEEPER—EVIDENCE—SUFFICIENCY.

In an action against a boarding house keeper by a guest for the loss of property taken from his room, evidence considered, and *held* insufficient to show actionable negligence on the part of defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Innkeepers, § 38½.]

Appeal from Municipal Court, Borough of Manhattan, Sixth District.

Action by Samuel Gilbert against Belle W. Williams. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

Argued before GILDERSLEEVE, P. J., and McCALL and FORD, JJ.

Maurice Nagler, for appellant.
Jerome Eisner, for respondent.

GILDERSLEEVE, P. J. Defendant kept a boarding house at Nos. 5, 7, 9, and 11 East Thirty-First street. The principal entrance was in No. 7, and there was a boy in charge of that entrance. Plaintiff had a

room in No. 5. The boarders, or at least some of them, had latch keys
to the entrance door of No. 5, at which entrance there was no hall boy.
On May 3, 1907, plaintiff left his room in the morning and was absent,.
as usual, most of the day. He claims he locked his door, upon leaving
the room, and placed the key under the carpet in the hall, as he had
been requested to do by the chambermaid. It seems that there was but
one key to each room, and the chambermaid, not having any pass key,
was obliged to use plaintiff's key, and that the custom was for the
boarders, upon leaving their rooms and locking their doors, to put
their keys under the carpet of the hall, so that the chambermaid could
find them and get into the rooms for the purpose of putting them in
order. While plaintiff was so absent from his room on May 3, 1907,
some one entered his room and stole certain articles of wearing ap-
parel; and upon returning to his room in the evening plaintiff found
his door partly open, with the key in the lock, and the articles of cloth-
ing gone. The front or street door of No. 5 was sometimes left open
by some boarders, who lived on the ground floor and desired to get
fresh air into their rooms in warm weather. There is nothing, how-·
ever, to indicate that this door was left open by defendant or her
agents, or with their knowledge or consent, except that, on one occa-
sion, her housekeeper found it open, with two boarders close by, at
whose request she allowed, apparently, the door to remain open while
the boarders remained where they could see any one attempting to en-
ter the doorway. The chambermaid testifies as follows:

"Q. You had charge of plaintiff's room? A. Yes, sir. Q. Do you remember
the day of the. loss? A. Yes, sir. Q. Was the door of his room locked on
the day of this loss? A. No, sir; it was not locked. He never locked the door.
I never found the door locked. I locked it the first time he came, and Mr.
Gilbert (plaintiff) came up to me, and I showed him where the key was.
During all the time he was there before the loss, he went out and left the
door open. I locked the door the first day, then I did not lock it any more.
Q. Do you know where the key was during all these times? A. Yes, 'sir;
when it was not locked, it was in the door, and remained there. The first
time I locked the door Mr. Gilbert (plaintiff) said he had come all the way
upstairs and could not find the key. I told him to lock the door and put
the key by the side of the door (under the hall carpet). He said he did not
want the door locked. The next day I did not find the door locked. Q. Did
that continue during the time he was there? A. Yes, sir. Q. Are you posi-
tive that he at no time during this time locked the door? A. I do not re-
member of ever having [finding] the door locked until his things were taken.
I found it always locked after that, and the key put under the carpet. Q.
You are sure that at no time you had to use a key to get in his room? A. I
always went in. I never found it locked (up to the time of the loss of the
wearing apparel). Q. Did you ever report to defendant that he was in the
habit of leaving the door open? A. No, sir. Q. Did you ever call his atten-
tion to that fact? A. The first time, I told him to always lock the door. He
did not lock the door after that, and I did not lock it."

Defendant's housekeeper testifies that when plaintiff first came to
the boarding house he made "a great fuss" because his door was locked
and he could not find the key. Plaintiff denies that he was in the habit
of leaving his door unlocked. The court below found for defendant,
dismissing the complaint on the merits. Plaintiff appeals.

Although, as pointed out by Judge Loew in the case of Smith v.
Read, 6 Daly, 33, a decision of the former General Term of the Court

·of Common Pleas, it is somewhat difficult to see, under present con-·ditions, why any distinction should be made between the liability of an innkeeper and that of a keeper of a boarding house or lodging house with respect to loss by a guest, such a distinction is nevertheless made by the great weight of authority. While the innkeeper is compelled to receive practically every one, the boarding house keeper may refuse whom he chooses to refuse, thereby exercising more care in the selec-·tion of his clients, and the statute now gives to the boarding house keeper the same lien on the property of his clients that the innkeeper has (Jones v. Morrill, 42 Barb. 623); so that, as was said in the case of Smith v. Read, "it is difficult to see why, on principle merely, the boarding house keeper should not be required to take at least as much care of the goods of a guest as the innkeeper." Be this as it may, how-·ever, the common law holds the innkeeper absolutely liable for all thefts from within or unexplained losses of property in his charge belonging to his guest, although he may be discharged from liability by the con-tributory negligence of the guest. 11 Am. &·Eng. Ency. of Law, pp. 51, 53; Metzger v. Schnabel, 23 Misc. Rep. 699, 52 N. Y. Supp. 105; Mowers v. Fethers, 61 N. Y. 37, 19 Am. Rep. 244. The innkeeper is ·deemed an insurer of the property of his guests, and is bound to make good any loss, with some few exceptions. Hulett v. Swift, 33 N. Y. 571, 88 Am. Dec. 405. This rigid liability does not extend to the boarding house keeper, whose duty to his boarders with respect to their property is merely to exercise such care as a prudent person would ·exercise over his own property, under similar circumstances. Metzger v. Schnabel, supra. The boarding house keeper is, of course, responsi-·ble for the negligence of his servants in the case of a boarder's prop-·erty (Smith v. Read, supra), and, like the innkeeper, may be discharged from liability by the contributory negligence of the guest.

The question to be determined in the case at bar is this, viz.: Does the evidence show want of such care, on the part of defendant or her servants, as a prudent person would exercise in the care of his own property; and did not the acts of plaintiff show negligence on his part ·contributing to the loss? The court below had a right to believe the testimony of the chambermaid that plaintiff insisted on leaving his door unlocked. While it may not be necessary that a guest should keep his room locked at all times, so as to entitle himself to protection against robbery (Buddenburg v. Benner, 1 Hilt. 84), nevertheless where he makes a practice of so doing in a large boarding house, when he has been given a key and advised by the servant of the boarding house keeper to keep his door locked, such action on his part may be regarded as an element in the case tending to show negligence on his part. So far as the question of any negligence on the part of the defendant is concerned, the proofs adduced at the trial do not, in our opinion, show a lack of requisite prudence and care, except, perhaps, in one particu-lar, viz.: It would have been more prudent to have a pass key for the chambermaid, and to allow each guest to carry his key with him, instead ·of placing it under the carpet in the hall. However, there is nothing in the case at bar to indicate that the loss occurred through some one finding the key under the carpet; but, on the other hand, the court be-low evidently found, upon the evidence of the chambermaid, corrob-

orated in part by that of the housekeeper, that the door was left unlocked at plaintiff's request.

We are of opinion that the judgment should be affirmed, with costs. Judgment affirmed, with costs. All concur.