BENJAMIN JOHNSON v. GEORGE W. REYNOLDS.

*Error from Douglas County.*

Where a regular boarder by the week at a hotel, deposited gold with the defendant below, the hotel keeper, who put it in the bar-room safe with his own valuables, and, where the record shows that the safe was entered by burglars and the gold stolen; in an action for the amount, *held* that the defendant was not liable as an inn-keeper, [Story Bail, sec. 477;] *Held* that the bailment was a naked deposit without reward.

*Held* that the obligation of the depositary was *first*, to keep the deposit with reasonable care, depending upon the nature of the deposit and the circumstances, and *second*, to return it according to the original trust.

*Held* that the reasonable care required under the circumstances was only that degree which persons of less than common prudence take of their own concerns, and that the depositary would be liable only for gross neglect, the record failing to show which, the defendant below cannot be held liable.

Order of court below refusing a new trial on the ground that the verdict was unsustained by evidence, reversed and new trial ordered.

The following statement of the facts of the case are taken from the opinion of the court.

This action was brought in the court below by Reynolds against Johnson, to recover the sum of $338, being the amount of a package of gold coin left in charge of defendant by plaintiff, and subsequently stolen.

The bill of exceptions embodies all the evidence offered in the court below, which was as follows:

"The plaintiff George W. Reynolds testifies that on or about the 1st day of August, A. D. 1860, he deposited

33

$338 in gold with defendant. It was done up in a rag marked $338. Defendant took it and put it in his safe. No receipt was asked for or given. That the safe was locked by Johnson and he kept the key.

"The safe was broken open the night that Seward spoke in Lawrence, in the first part of September, A. D. 1860, and the money was stolen. The thieves came in at the back window and entered the shop by means of false keys. Defendant kept hotel at the time and plaintiff was a regular boarder by the week, and paid for his board by the week.

"Dr. Dunn testified that he came into the bar-room and saw the safe standing open, and no one was in the room. On cross-examination, he testified that he could not see whether there was anything in the safe or not; could not see inside of the safe on account of its position. Was not positive as to the time, but thought it was between the first of August and the first of September, 1860.

"Dr. Lewis testified that he kept papers on deposit in the same safe; wanted to get at them on one occasion and Isadore, daughter of defendant, got the key, opened the safe and got the papers; could not say there was money in it at the time.

"Benjamin Johnson, the defendant, testified as follows : 'I kept the Johnson House, a hotel; plaintiff Reynolds was a regular boarder and made it his home at my house during the summer and fall of 1860. Commenced March 1st, 1860, and continued until a week after the money was stolen. No person but myself ever kept the keys to the safe during that time, nor was any person allowed to go to the safe when there was money in it. The safe was at different times and intervals allowed to stand open that it might air, to prevent molding, when everything was taken out, including money and valuables. It was probably at one of these times that witness Dunn saw it open. The safe was never left open with money or valuables in it.

Johnson v. Reynolds.

I had valuable papers, notes and negotiable bonds, and a draft on New York and silver-ware in the safe at and during the time plaintiff's money was in it. I had convertible property to the amount of $2,000, or $3,000 in it at the time the safe was broken open. My house was entered on the night Seward spoke, by burglars, as near as we could judge by appearances, from a back window. The safe was opened and entered by means of a false key, and the drawer in which the money and valuable papers of mine were deposited, was broken out and carried to a back window, where the papers were scattered and the drawer left. Plaintiff's money was gone. This was done without my knowledge, consent, procurement or connivance. I always had a person,—my cook slept in the room adjoining the office where the safe was. He was there the night it was so entered. There was a very large crowd that night,— over one hundred and fifty guests."

This was all the evidence offered to the jury, and upon it the jury found a verdict for the plaintiff against the defendant for $338, upon which judgment was entered.

To the rendition of this judgment the defendant duly excepted and afterwards moved for a new trial on the ground that there was no evidence before the jury to sustain the verdict, which motion was overruled by the court. The defendant excepted to the ruling and now asks that the judgment may be reversed for the same cause.

*E. V. Banks*, for plaintiff in error, submitted:

1st. *The bailment* was a "*depositum.*" (*Edw. on Bail.*, 35, 47; 2 *Kent*, 560.) The defendant in error was a lodger, not a guest at the house of plaintiff in error. (*Edw. Bail.*, 394, 397, 421; *Rol. Abr.*, 3; *Story Bail.*, sec. 485; *Willard* v. *Reinhardt*, 2 *E. D. Smith*, 148.) The latter had no lien on baggage. (*Grinnell* v. *Cook*, 3 *Hill*, 485; *Peet* v. *Mc-Grew*, 25 *Wend.*, 653.) The contract for board and that

for the bailment were separate; there was no agreement to "*safely keep.*"

2d. No liability is created in absence of gross negligence. *Edw. on Bail.*, 35, 47; *Edson* v. *Weston*, 7 *Cow.*, 278; *Beardslee* v. *Richardson*, 11 *Wend.*, 20.

3d. The degrees of diligence and care required, are matters of law; all the evidence in the case being given, it is competent for the court to determine whether there was any evidence showing gross negligence. 6 *Hill*, 433; 17 *N. Y. R.*, 9; 1 *Cal.*, 162.

4th. Gross negligence defined—the want of that care which every person of common sense, how inattentive soever, takes of his own property. (*Edw. on Bail*, 44; *Foster* v. *Essex Bank*, 17 *Mass.*, 479). As to distinction between it and ordinary care (*see Edw. Bail.*, 44; *Jones Bail.*, 46, 76; 4 *Abb. N. Y. Dig.*, 116, *and cases cited. See also Edw. Bail.*, 223; *Story on Bail.*, secs. 17, 332; *Bracton*, 99, *b.*) The record shows plaintiff in error to have been ordinarily diligent; he deposited the bailment with his own valuables. *Edw.* 35, 47, 71; *cases cited above*; 7 *Cow.* 278; *Jones on Bail.*, 41; *Story Bail.*, secs. 19, 20, 21, 22; *Finuane* v. *Small*, 1 *Esp.*, 315; *Jones*, 39; 2 *Kent Com.*, 562; *Main* v. *West*, *T. U. P. Charlt.*, 172; *Monteith* v. *Bissell*, *Wright*, 411.

*G. W. Smith*, for defendant in error, submitted:

1st. The record involves no question which the court can pass upon. The case was tried by a jury who heard the evidence; it presented a question of fact. The court is presumed to have instructed them properly as to the law. There is some evidence of neglect; the jury are the sole judges as to whether the evidence, which it is conceded tended to show some neglect, was sufficient to show gross, or some lower degree of negligence. They determined by their verdict for the plaintiff below, that the evidence showed gross neglect. The court below who saw the wit-

nesses on the stand, properly refused to grant a new trial. The verdict of a jury upon a question of fact material to the issue, where there is *some* evidence to sustain it, will not be disturbed.

*By the Court,* BAILEY, J.

On this record the first question presented is, whether the defendant Johnson was liable as an inn-keeper, and we are clearly of the opinion that he was not. The proof shows that the plaintiff Reynolds, at the time he made the deposit with Johnson, and for a long time before, was a regular boarder by the week, and not a traveler or guest. Hence the strongest rule of law as to the liability of an inn-keeper, does not apply to this case. This point is too well settled to require argument. The authorities are conclusive and unanimous.

"As inns are instituted for passengers and wayfaring men, a neighbor or friend who is no traveler but comes to the inn at the request of the inn-keeper and lodges there, is not deemed a guest. But where a traveler comes to the inn and is accepted, he becomes instantly a guest. If a traveler leaves his horse at an inn and lodges elsewhere he will be deemed a guest, but he will not be deemed a guest in such a case if he leaves goods for which the inn-keeper receives no compensation. The length of time that a man is at an inn makes no difference whether he stays a week or a month or longer. So always, that although he is not strictly *transiens* he retains his character as a traveler. But if a person comes upon a special contract to board and sojourn at an inn, he is not in the sense of the law a guest, but he is deemed a boarder." *Story on Bailments, sec. 477, and cases cited.*

What then is the character of the bailment disclosed in the testimony in this case, and from which the liability of the plaintiff in error arises?

Manifestly it is that species of bailment known in law as

a deposit, *depositum*, which is defined to be " a naked bailment of goods, to be kept for the bailer without reward, and to be returned when he shall require it. (*Story on Bail.*, sec. 4, 41.) Or a contract by which one of the contracting parties gives a thing to another to keep who is to do so gratuitously, and obliges himself to return it when he shall be requested. *Pothier Traite Depot, n.* 1 ; *Civil Code of France, art.* 1915.

Conceding, then, that the delivery of the gold by Reynolds to Johnson was a *deposit* and that Johnson became a depositary, what were the obligations arising on Johnson's part from the fact of the deposit ?

The answer is given by the same distinguished jurist. " It consists of two things : *first*, that he shall keep it with reasonable care ; and *second*, that he shall return it according to the original trust. But what is to be deemed reasonable care ? Being a bailee without reward, the depositary is bound to slight diligence only ; and he is not therefore answerable except for gross neglect. But in every case good faith requires that he should take reasonable care of the deposit. And what is reasonable care must materially depend upon the nature, value and quality of the thing ; the circumstances under which it is deposited, and sometimes upon the character and confidence and particular dealings of the parties.

It is often laid down in the books that the depositary is bound to take the same care of the deposited goods that he takes of his own.

The depositary is, as has been stated, bound to slight diligence only ; and the measure of that diligence is that degree of diligence which persons of less than common prudence at all take of their own concerns." *Story on Bail.*, secs. 63, 64.

The modern Civil Code of France adopts the same rule. The depositary must bestow (says the Code,) in the keep of the thing deposited the same care that he bestows in keep-

ing the things belonging to himself. · *Civil Code of France,*
*art.* 1927; *Code of Louisiana, art.* 2908.

This rule was adopted after a very full and able discus-
sion of the whole subject, in the case of Foster *et al, v.*
Essex Bank, 17 Mass., 479, a case which from the interest
involved as well as from the eminence of the counsel en-
gaged on either side, and the high character of the court
is entitled to great consideration. In that case it was held
that where a cask containing fifty thousand dollars in gold
was deposited in a bank for safe keeping, and the gold
was fraudulently taken out by the cashier of the bank, that
the bank was not liable to the depositor for the value of
the gold so taken.

We see nothing in the case at bar to distinguish it ma-
terially from this and other similar cases, or if there are
points of difference they tend rather to strengthen the case
of the plaintiff in error than that of the defendant.

The defendant was well acquainted with the plaintiff in
error, having boarded and made his home at the plaintiff's
house for several months, and it clearly appears that the
defendant's gold was kept in the same safe as that in which
the plaintiff in error kept his own money and valuables.

The judgment will be reversed.

All the justices concurring.