CASE 7—PETITION ORDINARY—APRIL 17.

# Vance, &c., vs. Throckmorton & Anderson.

### APPEAL FROM MERCER CIRCUIT COURT.

1. Proprietors of the Galt House are not responsible for articles belonging to a family of boarders, under a special contract, which were lost by the burning of the hotel.

2. Boarders at a hotel, under a special contract, are not, in the sense of the law, guests, but they are deemed boarders. (*Story on Bailments, sec.* 477.)

3. The responsibilities of hotel or innkeepers to boarders, who are not in the legal sense guests, are not regulated by the rigid rules which, as matters of public policy, both the civil and common law have adopted in regulating the liabilities of innkeepers to their guests.

4. *Prima facie*, the keeper of a hotel or inn should be held liable to restore the baggage of his guest; yet, when he shows its destruction by fire, this should be regarded as exonerating him from liability, unless it be made appear that he, or those for whom he is responsible, by negligence caused the fire, or failed to extinguish it.

5. Innkeepers are not responsible for goods of which the guest has exclusive custody or control. (*Story on Bailments, sec.* 483.) Their responsibility is only coextensive with their custody and control, and their pledge of the integrity of their servants. (*Weisinger vs. Taylor, &c.,* 1 *Bush,* 276.)

6. The landlord or innkeeper should be held responsible for such things as travelers may be presumed to take generally as traveling paraphernalia, regarding the circumstances and situation of each as apparent from the style and manner of traveling; and if responsibility beyond this is attempted to be fixed on the landlord, it must be shown, by evidence direct, or circumstantially, that he undertook such extraordinary liabilities. (11 *Ind. Rep.*, 434.)

7. *Prima facie*, the law would not impose upon the landlord responsibility for silver-ware, bed-clothing, books, money, *et cet.*, especially as to mere boarders.

W. A. HOOE and
NAT. GAITHER,                                    For Appellants,

CITED—

*Story on Bailments, secs.* 470, 471, 481.
5 *Ad. & Ellis' N. S.*, 164; 48 *E. C. L.*, 164.
9 *B. Mon.*, 72; *Kisten vs. Hildebrand.*
2 *Met.*, 439; *Packard vs. Northcraft's adm'r.*
3 *Parsons on Contracts, p.* 623.

J. B. THOMPSON, SR.. & JR.,
P. B. THOMPSON, and
J. B. T. DAVIESS,                                For Appellees,

CITED—

*Civil Code, secs.* 345 *and notes*, 614, 636.
1 *Bouvier's American Institutes, pp.* 409, 410.
1 *Parsons on Contracts, pp.* 625, 627.
2 *Met.*, 439; 9 *B. Mon.*, 72.
18 *B. Mon.*, 383; *Tudor vs. Tudor.*
1 *Bouvier's Law Dic., p.* 572.
*Bacon's Abridgment, "Inns."*
*Story on Bailments, sec.* 477, *&c.*
16 *B. Mon.*, 356; 1 *Met.*, 29.
*Jones on Bailments*, 95, 96, 97, 98.
1 *Bush*, 275; *Weisinger vs. Taylor, &c.*

---

Vance, &c., vs. Throckmorton & Anderson.

---

CHIEF JUSTICE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Mrs. Vance, her two daughters, son, and servant, were boarding at the Galt House in Louisville, kept by Throckmorton & Anderson, when it was destroyed by fire, on the night of January 10th, 1865.

W. L. Vance and his family lived in one of the interior counties of the State, but because of the disturbance and dangers of the late war, and because he was much from home, he took his family to Louisville, together with their wardrobe and silver-ware and most of their family paraphernalia, and, by special contract, became boarders at the Galt House, a leading hotel of the city, and were so boarding when appellees became the lessees and landlords, January 1, 1865, and continued, under the same special agreement, with three rooms, over which they seemed to exercise general, if not exclusive, control. Their diamond jewelry was deposited in the safe of the hotel, but their rich wardrobe and other costly articles, consisting of books, writing-desk, pictures, albums, operaglasses, handkerchief-case, toilet-glass, hair-braids, waterfalls, trunks, velvet and fine worsted quilts and other fine bed-clothing, silver spoons and forks, fruit-baskets, preserve and sugar-stands, and many other articles of various kinds, amounting in value to some thirteen thousand four hundred and twenty-two dollars and eighty-five cents, were in their rooms, and were almost totally destroyed.

This suit was brought by the landlords to recover for the ten days' boarding, to which appellant plead an offset for the lost articles; and the jury having found for plaintiffs for their board bill, and against defendants on their counter-claim, they seek a reversal.

This case necessarily involves several important questions—

1. Were the landlords under the same responsibilities to these persons as to ordinary transient travelers?

2. Were they responsible for other things than the traveling paraphernalia?

3. Was the destruction of the hotel by fire such a casualty as they were responsible for, unless it be shown to have been caused by their negligence, or those under them?

In *Story on Bailments* it is said (*sec.* 469): "In point of fact, the origin of the common law may be clearly traced up to the Roman law, from which the common law, without adequate acknowledgment, has, from time to time, borrowed many of the important principles which regulate the subject of contracts."

This is in the 7th article of chapter 6, and which is devoted to the subject of innkeepers.

In section 477, same article, in stating who are to be deemed guests, he says: "The length of time that a man is at an inn makes no difference; whether he stays a week, or a month, or longer; so always, that although he is not strictly *transiens, he retains his character as a traveler;* but if a person comes upon a special contract to board and sojourn at an inn, *he is not, in the sense of the law, a guest, but he is deemed a boarder.*"

As Mrs. Vance and her family were not, in the legal sense, *guests*, but *boarders*, the responsibilities of the landlords were of a different character, and not to be regulated by the rigid rules, which, as matters of public policy, both the civil and common law have adopted in regulating the liabilities of innkeepers to their guests. Besides, in this case, it is manifest that Mrs. Vance and her daughters had the exclusive control of not only their traveling wardrobe, but all the other things, save the jewelry, which was deposited in the safe.

In section 483, Story says the innkeeper may be exonerated "*by showing that the guest has taken upon himself*

*exclusively the custody of his own goods;"* and as said by this court in *Weisinger vs. Taylor et als.* (1 *Bush,* 276), " the innkeeper's responsibility is only coextensive with his custody and control, and his pledge of the integrity of his servants; and the question of custody and control depends on facts indicative of intention." This exoneration extends even against thefts, not committed by the landlord, his servants, or boarders, or other persons in his service; " and the burden of proof, in such case, is on the guest whose goods are stolen." (*Sec.* 468*a, Story on Bailments.*) The reason assigned for this by the Roman law is, that the innkeeper has no right of choice as to the persons who may come to his inn as travelers; but he is bound to receive them; whereas, his servants and his boarders are admitted and selected by his own choice. (*Same, sec.* 466*a.*)

In *Pettigrew vs. Barnum* (11 *Ind. Rep.,* 434) it was held, by the Supreme Court of Indiana, that an innkeeper is responsible for the guest's baggage only, and that this term does not include merchandise or other valuables, such as silver knives, forks, and spoons. We think it is but reasonable that the landlord should be held *prima facie* responsible for such things as travelers may be presumed to take generally as their traveling paraphernalia, regarding the circumstances and situation of each as apparent from the style and manner of traveling; and if responsibility beyond this is attempted to be fixed on the landlord, it must be shown, by evidence direct, or circumstantially, that he undertook such extraordinary liability.

*Prima facie,* the law would not impose upon the landlord responsibility for silver-ware, bed-clothing, books, money, *et cet.,* especially as to mere boarders.

The destruction of the hotel by fire is not satisfactorily accounted for. Mrs. Vance and her daughters seemed to

apprehend it was by the incendiary act of a former servant of theirs, who was then in the city, and who had, as they believed, on former occasions, attempted to fire their dwelling; whilst one or both of the landlords seemed to think that it likely took fire by pouring down the dumb-waiter, made of plank, and not lined with tin, ashes from the upper stories; but however this may be, it was a most disastrous casualty, both to the lessees and owners of the hotel; and nothing in the case shows it was from negligence, unless the want of metallic lining in the flue or dumb-waiter should be so determined. But no attempt was made to show that this flue had been recently erected, or that a metallic lining had ever been in it; or if so, that it had been recently taken out; and, so far as appears, it may be presumed that this flue or dumb-waiter had been used since the first erection of the house, in its then condition, and that no previous casualty had occurred from such use.

The Prætor's edict in the Roman law, declaring that if shipmasters, innkeepers, and stable-keepers, did not restore what they had received to keep, he would give judgment against them, was construed to mean that the bailees were liable in every case of loss or damage, although happening without any default on their part, unless it happened by what was called a fatal damage; but losses by fire, burglary and robbery, seem to have been deemed losses by fatal damages, as well as those by shipwreck, by lightning, by pirates, and by superior force. (*Story on Bailments, sec.* 464.)

We think this but a reasonable doctrine; and though, *prima facie,* the landlord should be held liable to restore the baggage of his guest, yet when he shows its destruction by fire, this should be regarded as exonerating him from liability, unless it be made appear that he, or those

for whose conduct he is responsible, by negligence caused the fire or failed to extinguish it.

The instructions given were as favorable to appellants as the law admits, and no error to their prejudice in refusing instruction is perceived; hence the judgment is affirmed.