DENNIS HAGGERTY v. THE FLINT & P. M. RAILROAD COMPANY.

*Agency of conductor to collect fare—How limited.*

Plaintiff took passage on one of defendant's trains at Bay City, informing the conductor that he lived in Detroit, not far from the Grand Trunk Junction, where he desired to get off, and asked the fare, which he was informed was $3.10, which he paid, receiving a red check or ticket. Plaintiff knew that the fare to Detroit was $3.25, and that this Junction was about three miles from the Detroit depot. At Wayne plaintiff passed into another car where the conductor took up his check and the car was switched off defendant's road on to the Michigan Central Railway and attached to a train on that road bound for Detroit, defendant's train passing on to Toledo on its road. Plaintiff supposed he had paid his fare to Grand Trunk Junction and was not informed by the conductor that he had only paid to Wayne. After leaving Wayne a new conductor demanded the fare from Wayne to Grand Trunk Junction, and on failure of plaintiff to pay same he was ordered to leave the car, but no indignity was shown

him, nor was he touched by the conductor or trainmen.  The evidence showed conclusively that defendant's conductors had no authority to collect fare of a Detroit passenger beyond Wayne Junction and that the fare from Wayne to Detroit is collected by the Michigan Central conductor.  There was no evidence tending to show that plaintiff was induced to believe that defendant's conductor had any authority to collect fare beyond Wayne Junction over the Central road, by any action of defendant.

*Held,* that the case must rest upon the general principle that an agent to bind his principal, must act within the scope of his agency, and there being no express authority conferred upon the conductor in question to collect fare from Wayne to Detroit, nor any usage or facts connected with his position from which such authority can be implied, the plaintiff cannot base a claim for damages for his ejection from the car, upon the conductor's acts or conduct as shown in this case.

Error to Superior Court of Detroit. (Chipman, J.) Argued January 7, 1886.  Decided January 27, 1886.

Case.  Defendant brings error.  Reversed.  The facts are stated in the opinion.

*Wisner & Draper* and *William L. Webber* for appellant.

As to authority of the conductor to take fare for a point beyond the line of defendant's road cited the following cases : *Ohio & Miss. R. R. Co. v. Hatton,* 60 Ind. 12 ; *P. C. & St. L. v. Nuzum,* 60 Ind. 533 ; *McClure v. Phila. &c. R. R.* 6 American 345 ; *R. R. Co. v. Applewhite,* 52 Ind. 540 ; *Pennington v. Phila. &c. R. R. Co.* 62 Md. 95 ; *Johnson v. Phila. etc. R. R.* 63 Md. 106 ; *M. & O. R. R. v. Taft,* 28 Mich. 289 ; *Wells v. Martin,* 32 Mich. 478 ; *Reynolds v. Continental Ins. Co.* 36 Mich. 131 ; *Frederick v. Marquette etc. R. R.* 37 Mich. 342 ; *N. Y. Iron Mine v. First Nat. Bank,* 39 Mich. 644.

*Dickinson, Thurber & Hosmer* for plaintiff :

Defendant's liability on the facts in this case cannot be doubted : Hutchinson on Carriers, page 461 ; and the principle on which such responsibility rests has never been successfully controverted.  While the right to recover of the co-defendant, except for ejecting plaintiff at an improper place or improper time, under peculiar circumstances, has never been contended for by us in this case, the carrier orig-

inally contracting for the transportation, as did the defendant in this case, may be held liable to the full extent claimed : *Townsend v. N. Y. C. etc. R. R. Co.* 56 N. Y. 295 ; *Shelton v. L. S. & M. S. R. R. Co.* 29 Ohio St. 214 ; *Pittsburg etc. R. R. Co. v. Hennigh,* 39 Ind. 509 ; *Toledo etc. R. R. Co. v. McDonough,* 53 Ind. 289 ; *Chicago B. & Q. R. R. Co. v. Griffin,* 68 Ill. 499 ; *Frederick v. Marquette etc. R. R.* 37 Mich. 342 ; *Hufford v. G. R. & I. R. R.* 53 Mich. 118 ; *L. S. & M. S. R. R. v. Pierce,* 47 Mich. 277.

MORSE, J.   Plaintiff sued the defendant and the Michigan Central Railroad Company jointly in trespass on the case for injuries resulting, as he claimed, from an ejection from the car of the latter company near Dearborn station.   On the trial the circuit judge directed the jury to find a verdict for the Michigan Central, but submitted the case as against the defendant to their consideration.

Verdict and judgment resulted for plaintiff in the sum of $1,500, from which judgment defendant appeals to this Court upon writ of error.

The showing for plaintiff was substantially as follows :

The defendant runs and operates a railroad from Bay City to Toledo, and its track crosses the Michigan Central at Wayne Junction.   Here a car with the passengers for Detroit and points between this junction and that city is switched off and attached to the Michigan Central train, which train and the car so attached is managed and run into Detroit solely and exclusively by the employes of the Central.

The defendant corporation sells through tickets from Bay City and other points along its road to Detroit, which are good, by arrangement, on the Central, and advertises at Bay City through trains to Detroit.

The plaintiff, Dennis Haggerty, a boiler-maker, about forty-seven years of age, residing in Detroit, about a mile from what is known as the Grand Trunk Junction, in June, 1885, went to Bay City to look for work, going there by another route.

Saturday June 16, 1885, he started for home about 11:15 A. M., taking one of defendant's trains at Eleventh street, in

Bay City. He entered a smoking car and took a seat. After the train had started the conductor came along and asked for his ticket or his fare. Plaintiff had no ticket and told the conductor that he lived in Detroit, not far from the Grand Trunk Junction, and wanted to get off there, and asked him the fare. The conductor said it would be $3.10, which he paid, and received a red ticket or check, which he put in his hat. Plaintiff knew the regular fare to Detroit was $3.25, and that this junction was about three miles out from the Detroit depot.

When near Wayne a brakeman came into the car and sang out "Passengers for Detroit will please take the second back car." Plaintiff took his satchel and went back into the car designated. Soon after the conductor came in and took the check out of his hat. Plaintiff supposed he was taking up all the Detroit checks. The conductor said nothing to him at any time that the fare asked only paid to Wayne, though it appeared on the trial that $3.10 was the exact fare from Bay City to Wayne Junction. Plaintiff supposed he had paid his fare to Grand Trunk Junction.

After leaving Wayne a new conductor came around taking up tickets and asked plaintiff for his fare. Plaintiff told him that he had paid to Grand Trunk Junction, and in what manner. The conductor said he must pay 55 cents, the local fare, or be put off, as he could not ride without a ticket or the payment of fare. Plaintiff only had 25 or 30 cents. Plaintiff knew the regular line of the Flint & Pere Marquette road went to Toledo, and not to Detroit, and knew that its cars running into Detroit did so on the Central track; knew that the train he embarked on went on that day to Toledo, and that the car he was in had been detached therefrom, switched upon the other road, and then attached to a Central train.

Before reaching Dearborn the train slowed up and the conductor ordered the plaintiff to get off the car, which he did. No violence or indignity was offered him by the conductor or any of the train men, nor was he touched by them, but he

felt some shame and mortification because of the ejection in the presence of the passengers. The plaintiff was not injured in any way by the act of getting or jumping off the car.

It was raining at the time, and plaintiff walked a few rods to a grocery, taking shelter under the awning. He was wet before he got there, as he claims. He waited until it cleared up a little, and then walked along the railroad track home, passing Dearborn station without stopping. Two trains passed him while he was going. It rained more or less that afternoon. He arrived home at 6 P. M. very wet. In the morning he felt stiff. Was around the house unwell two or three days; then sent for a doctor, who attended him from June 20 to June 25. Was unable to work for about three weeks. Doctor's bill for attendance and medicine amounted to eight or nine dollars. Wages were worth about that time $2.75 per day. His illness was acute rheumatism in leg or thigh. Has not been able to work as well since as before his sickness.

It also appears without contradiction, by the testimony of David Edwards, assistant manager of defendant's road, a witness sworn on plaintiff's behalf, that the tickets sold by the Flint & Pere Marquette Railroad, which, by arrangement, are good for transportation over the Michigan Central to Detroit, are coupon tickets, consisting of two parts. The first part is taken up by defendant's conductors, and the balance left for the Central conductors to take up. He also says, which is not disputed :

" Our conductors are only authorized to collect as far as our road goes, to Wayne Junction, on a Detroit passenger. They are not authorized to accept cash fare to any point off the line of the Flint & Pere Marquette Railroad. When a passenger, having entered the train of the Flint & Pere Marquette Railroad Company under those circumstances, reaches Wayne and passes upon the Michigan Central line, the Michigan Central collects the regular local fare, fifty-five cents, I believe, from Wayne to Detroit. It is the same from Wayne to the Grand Trunk Junction, I think. Under this arrangement between the Michigan Central and the Flint & Pere Marquette Companies, the Flint & Pere Marquette Company has no control whatever over the Michigan Central

after their cars or passengers pass to the line of the Michigan Central Company. The Michigan Central engines and trainmen operate and run the trains from Wayne to Detroit, and the Flint & Pere Marquette have nothing to do with it. In case a through car passes over the road, it is taken by the engines of the Michigan Central at Wayne and hauled to Detroit."

The train that plaintiff took was advertised as a through train to Detroit. The company has a little ticket office at Eleventh street in Bay City, where plaintiff got on, but does not require persons to buy tickets before entering the cars there. If a passenger pays his fare on the train, the conductor has no power to take pay further than Wayne, and when the passenger leaves defendant's road there, and his car is attached to the Michigan Central train, he is on the same footing as any other passenger on that road going from Wayne to Detroit or any intervening point.

It is a frequent occurrence for passengers to get on at Eleventh street without tickets, and there has never been any objection to taking fare on the cars or any remonstrance made to passengers for getting on there without tickets. It was conceded by the plaintiff's counsel upon the trial that as far as the Michigan Central was concerned the ejection of the plaintiff was lawful, and that the plaintiff could only recover from that company damages for putting him off at an improper place or time.

It is very evident, without going into the evidence on defendant's behalf, that the verdict in its amount was most excessive and unjust. And while we cannot agree with the learned counsel for the defendant in his strictures upon the jury system, we must admit that in this case there is some excuse for his mistrust.

The plaintiff's actual pecuniary damages, under his own proofs, could not possibly exceed $100, and yet he is allowed $1,500, $1,400 of which must have been granted for the mortification of being ordered off the car and the pain and suffering of a few weeks, he being confined to his house but about a week. Such a verdict is indeed a temptation to men to

speculate in being ejected from the cars, and well calculated
to lessen the respect for the honesty of jury trials.

We find, further, no evidence in the case warranting the
submission to the jury of any damages received after the
plaintiff reached Dearborn station, or the assumption that
plaintiff's ejection from the cars was the cause of his illness.
There was no evidence tending to show that any exposure to
the rain, before he took shelter under the awning of the gro-
cery, caused his sickness in the most remote degree. If any-
thing that happened that day was the cause of his illness, it
was his walk of seven miles home, in the severe storm that
followed. There is no evidence that he did not have money
enough to pay his fare from Dearborn home, and two trains
came along that afternoon. If he saw fit to walk home in
the rain, he, and not the company, was responsible for the
consequences. He could only recover for the injury and
mortification of being expelled from the cars, and the direct
consequences of such expulsion, even if his expulsion was
unlawful.

The court should have so instructed the jury, and the tes-
timony of his sickness should have been stricken from the
case.

But a more serious question arises as to his right to recover
at all. The defendant's counsel asked the court to instruct
the jury that the plaintiff had no right of action under
either count of the declaration, there being two counts ; and
also that, it being undisputed that the cash fare from Bay
City to Wayne Junction was $3.10, the plaintiff, having only
paid that amount, was not entitled to further transportation,
and could not recover.

The theory of plaintiff's declaration is, as far as it charges
liability upon the Flint & Pere Marquette Railroad Com-
pany, that the plaintiff paid to said company the full price
and value required and demanded by it for his passage from
Bay City to Grand Trunk Junction; that the company
received and accepted it, and by so doing entered into an
agreement, and it became its duty to protect him from ejec-

tion from the cars of the Michigan Central, and to guaranty him safe conveyance to his destination.

The circuit judge instructed the jury upon the same theory as follows:

"The plaintiff, in his statement, makes out, as I regard it, a *prima facie* case. As I understand the plaintiff's statement, he bought a right from Bay City to the Grand Trunk Junction of a conductor of the Flint & Pere Marquette road, for which he paid, he claims, the amount the conductor charged him, $3.10, and in evidence of which he received a check which the conductor gave him. Now, on that check there was no writing, no printing; it was a colored check, which was put into his hat, as he says, and he received it as the evidence of his right to ride. If his statement is correct, the conductor did not tell him he would need a ticket; didn't tell him he would need any different arrangement; didn't tell him that would take him only to Wayne Junction; but actually accepted his fare to the Grand Trunk Junction, $3.10, and by that means gave him a right, so far as the Flint & Pere Marquette Company is concerned, to ride to Grand Trunk Junction. Whether that was the full fare to Grand Trunk Junction is something you have nothing to do with. The conductor represented the company, and, representing the company, the plaintiff had a right to rely upon the information, and he had a right to believe he had paid for a ride to the Grand Trunk Junction."

And, under the evidence to support the theory of the plaintiff's declaration, it must be claimed, as the circuit judge charged, and as plaintiff's counsel here contend, that the conductor, as the agent of the company, contracted in behalf of the defendant to carry the plaintiff to Grand Trunk Junction, and that the conductor had power and authority to make such contract. The argument is made that the conductor, taking the fare as he did, giving the plaintiff no information that the fare so paid would not take him to his destination, and permitting him to enter upon the last stage of his journey, changing into the car to be switched off, without giving him even a hint that he could ride no further without paying local fare on the other road, bound the company, by these acts, to provide the plaintiff passage on the Michigan Central to the Junction, and established its liability for all

damages occurring to the plaintiff by reason of his expulsion from the car by the employes of the Central.

As heretofore shown by the undisputed evidence, the conductor had no authority from the defendant to make any contract for passage on the line of the Michigan Central road, or to collect any fare in such cases as the plaintiff's beyond Wayne Junction. He only took the fare to that point. He did not tell plaintiff he could ride any further, but, when the plaintiff said he wanted to pay to Grand Trunk Junction, told him the fare was $3.10, and received it without saying anything. The plaintiff understood he had paid the whole distance, and the conductor did not undeceive him. But even if the conductor had told him in so many words that he could ride for the amount paid, to the point of destination stated by plaintiff, it would not have altered the case if the conductor had no authority to make such an agreement. No evidence was introduced showing any action by the defendant by which the plaintiff was induced to believe that the conductor had any authority to collect fare or grant rides beyond Wayne Junction.

The case, then, must rest upon the general principle that an agent, to bind his principal, must act within the scope of his agency. In the absence of any testimony showing that the defendant allowed its conductors to collect fare from Bay City and other points to Detroit, or to places between Detroit and Wayne, there was no reason for holding that the conductor in this case could bind the company as claimed by plaintiff's counsel. To hold this would be equivalent to holding that the conductor might have collected the fare to New York, and thereby bound the defendant to furnish passage over its connecting lines to that point. There being no express authority conferred upon this conductor to make any such contract, nor any usage or facts connected with his position from which such authority can be implied, the plaintiff cannot base a claim for damages upon his conduct or acts in this case.

It is a matter within the common observation and knowledge of the traveling public that, when passage is sold by

one railroad company over connecting roads to any point, tickets are issued with coupons, consisting generally of as many parts as there are different lines of road to be traveled over, and that conductors only take fare, with or without tickets, upon the line of their own roads. There is nothing to show that plaintiff was not aware of this general rule, nor that there was anything in the manner of defendant's conducting its road to give him reason to believe that its practice was otherwise. The plaintiff could not enlarge the scope of the conductor's agency, or increase defendant's liability, because of the belief in his mind that he had paid the conductor to Grand Trunk Junction, when in reality he had only paid to Wayne.

The record clearly shows that the plaintiff, under his own statement, had no cause of action against the defendant, and the court should have so informed and instructed the jury.

The judgment is reversed and a new trial ordered, with costs.

The other Justices concurred.