MOSES R. TAYLOR v. CHARLES P. DOWNEY, SURVIVOR, ETC.

*Bailment—Hotel-keepers—Liability to regular boarder.*

The day clerk of an hotel gave to a regular boarder the use of a drawer in the office safe, to which there was but one key, which was delivered to the boarder, for the deposit of money which the boarder had drawn from the bank to use in paying off men in his employ. A week or two later the boarder found that the drawer had been forcibly opened, and the money taken therefrom, by the night clerk of the hotel. And it is held that the proprietor of the hotel was, at the most, but a bailee for hire, and not liable for the loss of the money if ordinary care and diligence were used in the employment of the night clerk.[1]

Error to Ingham. (Person, J.) Submitted on briefs February 12, 1895. Decided April 2, 1895.

Case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Cahill & Ostrander,* for appellant.

*F. S. Porter (R. A. Montgomery,* of counsel), for defendant.

HOOKER, The plaintiff was a regular boarder at the defendant's hotel, where he had lived for some months. Being engaged in building, he drew money from one of the city banks for the purpose of paying his men; and, not wishing to keep it about his person, he requested the defendant's day clerk to put it in the safe, which was kept in the office of the hotel, and to give him a receipt

---

[1] As to the liability of a bailee for the wrongful appropriation by his servant of the thing bailed, see note to this case as reported in 29 L. R. A. 92.

for the amount. The clerk answered, "I will give you a drawer in the safe, that has but one key, and you can keep that." This was accepted, and after the money was expended the plaintiff returned the key. Two or three weeks later the plaintiff drew $200 from the bank for a similar purpose, and asked the defendant's clerk if the drawer was vacant. He was told that it was not, but that he could have another which had but one key. He took the key, and locked the money in the drawer. A week or two later he found that the drawer had been forcibly opened, and the money taken, by another clerk of the defendant, who had charge of the office nights. It was the practice to leave the safe open, defendant keeping a day and a night clerk. Action being brought against the defendant to recover the amount taken, the circuit judge directed a verdict for the defendant, from which the plaintiff has appealed.

The testimony shows that the night clerk was employed by the defendant upon recommendations from other reputable proprietors of hotels. Defendant had seen him once before employing him, on an occasion of his visit to his father, who was at the time a boarder at defendant's hotel.

Counsel for plaintiff admit that the relation between the parties was that of boarding-house keeper and boarder, and that such relation differs from that of inn-keeper and guest. They claim that the defendant was a bailee for hire, and therefore liable for loss of property by the bailor through fault of the bailee's servants. It is said that the defendant was in the habit of allowing boarders similar privileges to those enjoyed by transient patrons, but, if this is important, we discover no evidence to that effect. If the defendant was a bailee for hire, he owed the same care and diligence that all mutual benefit bailees are bound to exercise for the preservation of the property,

viz., ordinary care, and "for nothing less than ordinary negligence, or the failure to exercise such care and diligence as persons of average prudence bestow upon their own property under like circumstances, is he, while confining himself to the terms of the bailment, legally responsible." Schouler, Bailm. §§ 15, 316; *Millon v. Salisbury,* 13 Johns. 211; *Collins v. Bennett,* 46 N. Y. 490; *Chamberlin v. Cobb,* 32 Iowa, 161; Story, Bailm. § 398; *Smith v. Read,* 52 How. Prac. 14, 6 Daly, 33; *Lawrence v. Howard,* 1 Utah, 142; *Johnson v. Reynolds,* 3 Kan. 257; *Wiser v. Chesley,* 53 Mo. 547; *Comp v. Bank,* 94 Penn. St. 409. Such bailee is in no sense an insurer, as an inn-keeper is sometimes said to be, of the property of his guest; but he may be held liable for negligence upon his own part, or the negligence of a servant, if such negligence amounts to a want of ordinary care. If a liability is to be based upon negligence, in this case, it must be based upon a want of care in the employment of the night clerk, for it cannot be said that the clerk was negligent. On the contrary, he committed a felony by stealing the property, not only of the plaintiff, but the defendant also. It was done while in charge of the office by virtue of his employment. It was a complete and deliberate departure from his duty, and an entering upon an enterprise of his own, wholly outside of the scope of his employment. It was an illegal act, willfully done, for which the employer cannot be required to respond. See opinion of Patteson, J., in *Lyons v. Martin,* 8 Adol. & E. 512; *Stevens v. Woodward,* 50 Law J. C. P. 231; *Foster v. Bank,* 17 Mass. 479; *Bank v. Guilmartin,* 88 Ga. 797; *Comp v. Bank,* 94 Penn. St. 409; *Haggerty v. Railroad Co.,* 59 Mich. 366; *Sutherland v. Ingalls,* 63 Id. 620; Mechem, Ag. §§ 740, 741. There is nothing to show that the defendant did not use ordinary care and diligence in the employment of the clerk, and we must therefore hold that no recovery can

be had upon the ground of negligence. This discussion has been based upon the assumption that the deposit was a bailment for mutual benefit. This was not conceded in the case.

Counsel for the plaintiff argue, further, that the defendant "made it a part of his business to receive and take charge of the property of his boarders, and is liable for its safe-keeping," and that, while "there is no direct compensation for this service, * * * the contract for the safe-keeping was accessory to the main contract for board, and the plaintiff is entitled to damages for the breach of it, the same as a traveler upon a railroad train is for the loss of his baggage." We think there is a radical difference, the contract of the railroad company amounting to an undertaking to deliver the baggage as well as the passenger. The cases cited to sustain this point are cases of inn-keeper and guest. 1 Smith, Lead. Cas. (8th ed.) 416; *Needles v. Howard,* 1 E. D. Smith, 54.

There is not a uniformity of decision upon this question of a boarding-house keeper's liability to a boarder. In *Dansey v. Richardson,* 3 El. & Bl. 144, a divided court affirmed the instruction that a boarding-house keeper did not contract to safely keep baggage of a boarder. This was where a servant carelessly left a hall door open, permitting a thief to enter and steal the baggage, which was in the hall.

In *Holder v. Soulby,* 8 C. B. (N. S.) 263, Erle, J., protested against the claim that it was the duty of the keeper of a lodging-house to take care of a lodger's goods, and said that, where the proprietor had done nothing which amounted to a misfeasance, he knew of no authority or principle upon which he could be held responsible for mere absence of care. In a note to that case it is said that, "even in the case of a common inn, the inn-keeper is not liable as such to persons who reside permanently at

his house as boarders, nor otherwise than for actual negligence;" citing *Chamberlain v. Masterson*, 26 Ala. 371; *Manning v. Wells*, 9 Humph. 748.

In *Lawrence v. Howard*, 1 Utah, 142, it was held that requiring lodgers to lock their rooms and deposit the key at the office was ordinary diligence. Indeed, the court went further, and held that only slight care was required, implying that there was no bailment for mutual benefit in that case. The goods were stolen from the room where the proprietor left them after the plaintiff's departure.

The case of *Jeffords v. Crump*, 12 Phila. 500, holds that "an inn-keeper is not liable for goods of a boarder, stolen from the inn, unless there be proof of gross negligence;" thus implying, as did *Lawrence v. Howard*, that it was a case of *depositum*. See, also, *Neal v. Wilcox*, 4 Jones (N. C.), 146.

The case of *Smith v. Read*, 6 Daly, 33, is perhaps as strong a case in support of the plaintiff's contention as any, and this goes no further than to hold that ordinary care is due. See, also, *Calye's Case*, 8 Coke, 32a; Bac. Abr. "Inns and Inn-keepers," C (5); *Vance v. Throckmorton*, 5 Bush, 41; *Woollen Co. v. Proctor*, 7 Cush. 424; *Hancock v. Rand*, 94 N. Y. 1; Bish. Non-cont. Law, § 1171; *Johnson v. Reynolds*, 3 Kan. 257; *Car Co. v. Lowe*, 6 L. R. A. 809, and note; *Shoecraft v. Bailey*, 25 Iowa, 553.

It is probable that this is the limit of the rule, viz., that boarding-house keepers are liable, as bailees for mutual benefit, for the preservation of goods brought upon the premises by boarders. The nature of the liability is not changed by a deposit in the safe, though the degree of care may be increased over that required where the boarder retains the custody of valuables; but the keeper of the house is still a bailee for mutual benefit, and still owes the duty of ordinary care, which varies in degree as

the responsibility is thrown upon him or is assumed by the owner.

In this case it is contended by counsel for the defendant that this was a mere deposit; that the plaintiff drew his money from the bank where he usually kept it, and, for his own convenience, chose to make the safe his bank, which should not be said to have been contemplated by either party as a part of, or accessory to, their contract for board. It may be that there is room for such a distinction, but it is unnecessary to determine the question. The most that plaintiff's counsel can claim is that the defendant was a bailee for hire. If that be conceded, ordinary care was required. There is no proof that it was lacking.

We must therefore affirm the judgment of the circuit court.

The other Justices concurred.