MARY E. COE *vs.* GEORGE E. RICKER.

Suffolk.    November 22, 1912. — March 8, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Boarding House Keeper.    Bailment.*

In an action against the keeper of a summer boarding house for the value of jewelry alleged to have been lost through the negligence of the defendant, if it is shown that the plaintiff as a boarder and lodger in the house of the defendant deposited the jewelry with him for safe-keeping, it is to be presumed, in the absence of anything to the contrary, that the change of possession was requested and granted as a part of the contract for board and lodging, and it cannot be ruled as a matter of law that the bailment was a "naked deposit without reward."

HAMMOND, J.    This is an action to recover the value of certain jewelry which had been placed by the plaintiff in the custody of the defendant, and had been lost, as she alleged, by the negligence of the defendant.

At the trial it appeared that the defendant was the proprietor of a summer boarding house called the "Silver Beach Hotel," situated at North Falmouth in this State, and that, in accordance with a contract made several days before, the plaintiff, on August 1, 1910, went with her two children to the house to board for the whole month at the rate of $34 per week.

The evidence as to the deposit of jewelry was as follows: The plaintiff testified that, after she had been at the house about a week, "she had some talk with the defendant about her jewelry, and he said that he would put it in his safe and care for it for her. . . . She brought the jewelry to the office and the defendant's wife took it and placed it in the defendant's safe, as she had been instructed to do by the defendant." The defendant testified that, between two and three weeks after the plaintiff had been at the hotel, she requested him "to put some jewelry in his safe for safe keeping, and he did so."

The evidence as to the defendant's course of business in receiving for safe keeping the property of his guests was as follows: The plaintiff testified that "on at least two occasions the defendant had placed checks belonging to her in his safe; and that she

had never seen the safe." The defendant testified that the safe was small, "perhaps two feet high . . . about twenty inches high inside. . . . It was a combination safe. He bought . . . [it] . . . for his own use, and never thought of the guests when he bought it. . . . He never kept anything for guests, except two, for the nine years he had been there, and . . . was never requested to put valuables in the safe by guests except on two occasions, and . . . he made no charge for putting the plaintiff's jewelry in the safe . . . [He] used the safe to keep his own money in before banking it, which he did once a week on going to Boston."

He further testified that he was the proprietor of an "all the year round hotel" situated in Somerville in this State; that a man boarding there came down to this summer house "perhaps two or three times . . . over Sunday;" and that once this man placed a "roll of money" in the defendant's hands for safe keeping, and he put it in his safe.

It appeared also that by advertisements published in newspapers, by circulars and by headings on stationery furnished to the guests, the defendant called the house the Silver Beach Hotel and described himself as proprietor. But he had no innholder's license.

At the close of the evidence the defendant asked the Chief Justice* to rule in substance that if the jury should find that the plaintiff was not the guest of the defendant as an innkeeper the deposit with the defendant was as matter of law a "naked deposit without reward," and that the defendant would be answerable only for gross negligence. The Chief Justice declined so to rule, and instructed the jury that the plaintiff was a boarder in the defendant's house and that the defendant was bound to take such care of the goods deposited in his safe as a prudent man would take with reference to his own property. No exception to the charge was taken. The only question, therefore, is whether as matter of law the deposit was "without reward," or in other words what is technically called a *depositum*.

In considering this question it is to be noted that at the time the deposit was made the parties were not strangers, but sustained to each other the relation of boarder and boarding house

---

* The case was tried in the Superior Court before *Aiken*, C. J.

keeper. The plaintiff was in the defendant's house and she had with her certain property. The defendant had control of the house. There has been some discussion in England and in this country upon the degree of care for which a boarding house keeper is answerable with reference to the goods of a boarder or lodger. The two early leading cases in England are *Dansey* v. *Richardson,* 3 El. & Bl. 144, in which it seems to have been assumed that the landlord was answerable for some care, although the court was equally divided as to the degree, and *Holder* v. *Soulby,* 8 C. B. (N. S.) 254, in which it was adjudged that the landlord was not answerable for the theft by a stranger of the goods of the lodger. If we were left to these two cases alone, it would be difficult, in view of the apparent conflict between them, and of the divergent views of the sitting judges in each case, to say what in England is the duty of the boarding house keeper as to the goods of his boarder. But we are not left to these two cases alone. Whatever doubts may have been created by them are removed by *Scarborough* v. *Cosgrove,* [1905] 2 K. B. 805. In this last case these two earlier cases were thoroughly considered, and it was declared that it is the duty of a boarding house keeper to take reasonable care for the safety of property brought to his house by his guest. And such undoubtedly is the law of England to-day.

In this country there is apparently a conflict among the decisions on the matter (*Johnson* v. *Reynolds,* 3 Kans. 257; *Smith* v. *Read,* 6 Daly, 33), but the general weight of authority seems to be in favor of the proposition that the landlord of a boarding house is under an obligation to use reasonable care for the protection of the goods of his boarders. What is reasonable care is dependent upon the circumstances, one of which is the degree of control which the landlord has. The general nature of the care incumbent on a boarding house keeper is well stated by Coleridge, J., in *Dansey* v. *Richardson,* 3 El. & Bl. 144, in the following language: "My being received into the house at all is owing to a purely voluntary contract, of which the reception of my goods is a necessary part (for it would be simply absurd to suppose my lodging in a house, and not bringing with me my clothes and articles of personal use); and a pecuniary reward is the consideration. The liability of the . . . [boarding house keeper] . . . must be measured by what is reasonable; he receives, for hire and reward,

into his house a guest with clothes and personal chattels; he finds him servants to attend on him, or he attends on him himself; he supplies him with food, prepared by himself or his servants; and he reserves to himself the general control of the house, and undertakes, in a general way, for its security from without. I do not know that, in measuring the liability resulting from these circumstances, it is necessary to reduce it under any one of the five heads enumerated by Lord Holt in *Coggs* v. *Bernard* [2 Ld. Raym. 909; *S. C.* 1 Smith, Lead. Cas. 96]; there may be no express or independent bailment reducible under any one of them; and yet there may be a liability where they sustain damage or are lost by the misconduct or negligence of the boarding house keeper."

It is not necessary in the present case to define the degree of care owed by the landlord to a boarder where the property is under the general care of the boarder. As stated by Coleridge, J., it must be reasonable, whether or not the relation of the landlord to the property be reducible to any of the well recognized forms of bailment technically so called. Whatever it be, it is not without consideration. The price paid for the board entitles the boarder to this care.

In the present case the property was delivered by the plaintiff to the defendant for safe-keeping while they stood in this relation to each other. A change was thereby made in the actual physical situation. Before that time the jewelry had been in the personal possession of the plaintiff and under her immediate care. After that time it was in the personal possession of the defendant and under his immediate care. From the very nature of the transaction the plaintiff had ceased to be in charge of it and the defendant had assumed the entire charge. The act is not to be isolated from the contractual relations in which the plaintiff and the defendant as boarder and landlord stood to each other. In the absence of anything to the contrary it is to be presumed that the understanding of the parties was that this change in possession was requested and granted under the contract existing between them as boarder and landlord. In this view of the transaction the consideration for it might be found to be included in the price of board. It could not therefore have been ruled as matter of law that the bailment was a "naked deposit without reward,"

and the Chief Justice rightly refused to give the rulings requested, the sixteenth and eighteenth because erroneous in law and the seventeenth because immaterial.* This case is clearly distinguishable in material reports from *Davis* v. *Gay,* 141 Mass. 531, cited by the defendant.

For cases, in addition to those hereinbefore cited, bearing upon the general question, see *Newhall* v. *Paige,* 10 Gray, 366; *Hall* v. *Pike,* 100 Mass. 495; *Calye's case,* 8 Co. 32; *S. C.* 1 Smith, Lead. Cas. (11th ed.) 119; *Wiser* v. *Chesley,* 53 Mo. 547; *Taylor* v. *Downey,* 104 Mich. 532; *Lusk* v. *Belote,* 22 Minn. 468; *Ultzen* v. *Nicols,* [1894] 1 Q. B. 92, and cases cited in the notes; 22 Cyc. 1085, 1086. See also Beale on Innkeepers & Hotels, §§ 291, *et seq.,* and 27 Am. Digest, (Cent. ed.) 2418.

<em>Exceptions overruled.</em>

*O. C. Scales,* for the defendant.

*H. S. MacPherson,* (*J. B. Mahar* with him,) for the plaintiff.

---

* The rulings requested were as follows:

"16. If the jury find that the plaintiff was not a guest of the defendant as innkeeper but deposited the jewelry, etc., declared on, with the defendant for safe-keeping, then it follows as matter of law that it was a naked deposit without reward, and the liability of the defendant is governed by the principles applicable to that species of bailment, which are as follows: The defendant being a bailee without reward, the law requires him to exercise only slight diligence and holds him responsible only for losses attributed to his gross neglect.

"17. Gross negligence is a materially greater degree of negligence than the mere lack of ordinary care.

"18. If the jury find that the plaintiff was not a guest of the defendant as innkeeper, but deposited the jewelry, etc., declared on, with the defendant to put in his safe, it follows as a matter of law that it was a naked deposit without reward and that the defendant is answerable only for gross negligence which is considered equivalent to a breach of faith and as every one who receives goods of another in deposit, impliedly stipulates that he will take some degree of care of it, the degree of care, which is necessary to avoid the imputation of bad faith, is measured by the carefulness which the depository uses towards his own property of a similar kind. For although that may be so slight as to amount even to carelessness in another; yet the depositor has no reason to expect a change of character in favor of his particular interest; and it is his own folly to trust one, who is not able, or willing, to superintend with diligence his own concerns."